THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED
WORKMEN OF CONNECTICUT *vs*. THE GRAND LODGE OF
THE ANCIENT ORDER OF UNITED WORKMEN OF MASSA-
CHUSETTS.

Third Judicial District, New Haven, June Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

In an action to recover moneys in the hands of the defendant to which
the plaintiff claimed an equitable title, it appeared from the al-
legations of the complaint that the Ancient Order of United Work-
men was a fraternal insurance organization, with a membership ex-
tending throughout the greater part of the United States; that for
many years prior to October, 1901, the defendant, a Grand Lodge
of the Order, had jurisdiction over all the members of the Order
in the New England States, but that then the Supreme Lodge duly
set off the members of the Order in this State and placed them
under the jurisdiction of the Grand Lodge of Connecticut, which
thereupon became their representative, and, as such, succeeded to
such equitable rights in the funds and property in the hands of the
defendant as the Connecticut members themselves had therein at
the date of the separation; that for the purpose of adjusting their
financial relations, the parties entered into a contract providing
for the division of such property and funds, which the defendant
afterward refused to carry out, insisting in bad faith that the plain-
tiff had by such contract relinquished its right to any part thereof.
The relief asked for was an order requiring the defendant to make
either the payments agreed upon, or such as were equitably due to
the plaintiff, and, if necessary, to reform the contract in order that
it might express the original understanding of the parties. The
defendant demurred to the complaint on several grounds, among
others that it, the defendant, had no authority under the laws of
Massachusetts to enter into the alleged contract, that there was no
consideration for it, and that it afforded no cause of action against
the defendant. *Held:*—

1. That the gist of the action was not a violation of the contract obli-
gation, as the demurrer assumed, but the existence of relations and
of a series of facts and events out of which the alleged equitable
right of the plaintiff grew, irrespective of any contractual under-
taking.

2. That it did not appear that the Supreme Lodge had ever undertaken
to carry on any business in Massachusetts, and therefore the

question of its legal right to do so, under the laws of that State, was not involved.

3. That the authority of the Supreme Lodge to divide the territory and membership of the defendant, and the ·latter's recognition of and submission to such authority, sufficiently appeared from the averments of the complaint.

4. That the various bodies of the Order were in no sense separate and independent, but were interrelated parts of a single, comprehensive and unified system.

5. That the incorporation of the defendant under the laws of Massachusetts did not necessarily exempt it from the operation of the laws of the Order.

6. That in merely carving out the Connecticut territory and constituting the members of the Order resident therein a new Grand·Lodge with its own appropriate jurisdiction, the Supreme Lodge was concerned with the internal affairs of the Order and was in no sense carrying on business within the State of Massachusetts; and that its action was binding upon every subordinate body and individual member of the Order, regardless of any assent on the part of the defendant.

7. That membership in the Order carried with it certain property rights in the insurance funds, and that these rights were entitled to protection in equity.

8. That the mere fact that the plaintiff was a voluntary association for several months after the separation and was then incorporated, did not affect its right to represent and protect the equitable interests of the Connecticut members of the Order in the beneficiary and other funds in the hands of the defendant.

9. That the setting off of the Connecticut members under the jurisdiction of a newly-created Grand Lodge was in no sense a voluntary withdrawal or secession from the main body, and therefore worked no impairment of such an equitable interest as they had in the funds of the Order at the date of the separation.

10. That it was unnecessary to consider the true interpretation of the contract alleged to have been made between the parties, since that question concerned only a portion of what the plaintiff sought to recover, and in the event of an interpretation unfavorable to the plaintiff, it was possible the contract might be reformed.

11. That the action taken by the Supreme Lodge was not prohibited by the statute of Massachusetts (2 Revised Laws, Chap. 119, § 11), nor the right of a court of equity to do justice to all affected by such action.

12. That the averments of the complaint having shown a prima facie right and equity in the plaintiff to some portion of the funds in question, it was not essential that the complaint should allege an express power and authority upon the part of the defendant to pay over such sums to the plaintiff.

13. That it was immaterial whether the defendant had neglected to pay its matured claims or not, since those were stated and deducted in fixing the surplus in which the plaintiff claimed its share.

14. That it sufficiently appeared that the moneys claimed by the plaintiff were not held, needed, or used by the defendant for the benefit, or in the interest of, the separated Connecticut members, and that the defendant had refused to pay over these sums to the plaintiff.

Relief may be none the less equitable, because sought in the form of a money payment.

Argued June 10th—decided August 3d, 1908.

ACTION for an equitable accounting, brought to and tried by the Superior Court in New Haven County upon demurrer to the complaint; the court, *Gager, J.*, sustained the demurrer and rendered judgment for the defendant, from which the plaintiff appealed. *Error and cause remanded.*

The following is the complaint, including the prayers for relief:—

"1. The Ancient Order of United Workmen is a fraternal insurance organization with a membership extending throughout the United States, or the greater portion thereof. 2. The Supreme Lodge of the Ancient Order of United Workmen is a corporation which was organized under the laws of the State of Texas on January 2, 1900. 3. Prior to its corporate organization, said Supreme Lodge had existed for more than twenty years as the Supreme Lodge of said Ancient Order of United Workmen. 4. By authority of the Supreme Lodge, and subject to the constitution and general laws of the Order, grand lodges are organized and exist in such States, districts, territories and countries as have been, or as may be determined by the Supreme Lodge. 5. The defendant was organized as a Grand Lodge of said Order on February 25, 1879, and had jurisdiction over the members of said Order in the States of Maine, New Hampshire, Vermont, Massachusetts, Rhode Island and Connecticut. 6. The defendant was

organized as a corporation under the laws of Massachusetts on February 9, 1883, and in 1897 appointed the insurance commissioner of this State its attorney for the receipt of service of process, in order to obtain lawful authority to take risks and transact business in this State. 7. By the constitution and general laws of said Order, it is provided that the territory comprising a grand lodge jurisdiction having jurisdiction over more than one State, may be divided by the Supreme Lodge at a stated meeting into two or more grand lodge jurisdictions. 8. On October 17, 1901, the territory comprising the jurisdiction of the defendant, as aforesaid, was divided by the Supreme Lodge at a stated meeting in accordance with the laws of the Order, into the jurisdiction of the Grand Lodge of Connecticut, and the jurisdiction of the Grand Lodge of Massachusetts; and the members of said Order within the State of Connecticut were placed under the jurisdiction of the Grand Lodge of Connecticut. 9. Said Grand Lodge of Connecticut thereupon became the representative of the Connecticut members of the Order, and as such representative became equitably entitled to the share of the property of the defendant to which the members of said Order within the State of Connecticut were entitled at the date of the separation of said Grand Lodge of Connecticut. 10. For the purpose of adjusting the financial relations between said Grand Lodge of Connecticut representing the members of the Order in this State, and the defendant representing the remaining members of said Order under the jurisdiction of the defendant, the plaintiff at a stated meeting held October 17, 1901, adopted the following resolutions as a proposal for the settlement of its financial relations with the defendant, and thereafter submitted a copy of said resolutions to the defendant as an offer of settlement. Said resolutions were as follows: 'Grand Lodge of the Ancient Order of United Workmen of Connecticut. To all Workmen to whom these presents shall come, Fraternal Greeting: Know ye that

at the first stated meeting of the Grand Lodge of the Ancient Order of United Workmen of Connecticut, held in the city of New Haven on October 17, 1901, the following resolutions were unanimously adopted: Resolved, that following be and is hereby adopted by the Grand Lodge of Connecticut, as the basis of the settlement and adjustment of the financial affairs between it and the Grand Lodge of the Ancient Order of United Workmen of Massachusetts: Guaranty Fund. All liability to this fund prior to the date of separation is to be paid by the Grand Lodge of Massachusetts for the Beneficiary Fund, and all liability to said Guaranty Fund for and on account of the Grand Lodge of Connecticut on and after the date of separation is to be paid by the Grand Lodge of Connecticut. Beneficiary Fund. The Grand Lodge of Connecticut shall be responsible to the Grand Lodge of Massachusetts for all calls for the Beneficiary Fund made necessary by deaths occurring and by deductions for the Guaranty Fund on or before the date of separation, and all death claims in the jurisdiction of the Grand Lodge of Connecticut up to and including said date of separation shall be paid by the Grand Lodge of Massachusetts, and all death claims occurring after said date shall be paid by the Grand Lodge of Connecticut. The Grand Lodge of Connecticut shall not be entitled to any portion of the surplus in the Beneficiary Fund of the Grand Lodge of Massachusetts after the death claims occurring prior to date of separation have been paid. General Fund. The Grand Lodge of Massachusetts is to receive from the Grand Lodge of Connecticut as many sixths of its proportion of the semi-annual per capita tax as there have been months elapsed from the beginning of said semi-annual term up to and including the date of separation, the fractional part of a month, if any, to be considered as one month. The Grand Lodge of Connecticut is to pay to the Grand Lodge of Massachusetts its proportion of any deficit in the General Fund of the Grand Lodge of Mas-

sachusetts on June 30, the proportion to be based on a per capita computation. The disposal of all other funds or property in possession of or held by the Grand Lodge of Massachusetts, at the date of separation, is to be subject to such arrangements with the Grand Lodge of Connecticut as may be made by the Grand Lodge of Massachusetts at a session thereof. RESOLVED, That the Executive Committee of this Grand Lodge be and it is hereby authorized to act in behalf of the Grand Lodge of Connecticut with the Grand Lodge of Massachusetts, or such officers or committees as it may appoint for that purpose, in adjusting the details of all financial matters arising out of the institution of the Grand Lodge of Connecticut and the separation of its membership from the jurisdiction of the Grand Lodge of Massachusetts. In witness whereof, I have hereunto set my hand and affixed the seal of the Grand Lodge, this twenty-first day of February, A. D. 1902. James A. Knox, Grand Recorder. (Seal.)' 11. At a stated meeting of the defendant held on February 25 and 26, 1902, the foregoing resolutions of the said Grand Lodge of Connecticut were presented and were accepted by the defendant as a contract between said Grand Lodge of Connecticut and the defendant for the settlement of their financial relations. 12. The date of separation referred to in said resolutions was November 1, 1901, and the separation of the financial affairs of the two lodges took place upon that date. 13. The moneys collected by the defendant were collected by means of assessments levied from time to time upon the members of the Order within the jurisdiction of the defendant, which assessments were collected by the subordinate lodges within such jurisdiction, and were called by the Grand Recorder of the defendant from such subordinate lodges. 14. Assessment No. 264 amounting to $45,980 was called from the treasuries of the subordinate lodges to the treasury of the defendant by call No. 17 made September 2, 1901. 15. On January 1, 1901, the

defendant had on hand a balance of $50,521. 16. By receipts from arrearages and from assessments during the year 1901, up to and including said assessment No. 264, the defendant received $1,003,646. 17. The claims for the year 1901, paid by the defendant to September 23, amounted to $800,000. The claims due from the defendant to October 31, 1901, amounted to $154,000, and the Guaranty Fund to October 31, 1901, amounted to $97,221.73. 18. The balance in the Beneficiary Fund of the defendant, therefore, after the payment of said assessment No. 264 amounted to $2,945.27. 19. In using the following language in the foregoing resolutions, to wit: 'The Grand Lodge of Connecticut shall not be entitled to any portion of the surplus in the Beneficiary Fund of the Grand Lodge of Massachusetts after the death claims occurring prior to the date of separation have been paid,' it was understood by both the Grand Lodge of Connecticut and the defendant that the surplus referred to meant only the surplus remaining in the hands of the defendant from the last assessment which was necessary for the purpose of paying the required amount to the Guaranty Fund, and of paying death claims due to October 31, 1901; and that is the legal meaning of the language used in said resolution; or, if such is not the legal meaning of the language used, the Grand Lodge of Connecticut used such language in the sense above set forth, and the defendant knew that the Grand Lodge of Connecticut used said language in such sense. 20. On October 1, 1901, the Grand Recorder of the defendant made another call, to wit: call No. 18, requiring the payment of the money in the treasuries of the subordinate lodges realized from the payment by the members of assessment No. 265, in compliance with which call the subordinate lodges in the State of Connecticut paid into the treasury of the defendant in October, 1901, the sum of $11,763. 21. The money received from said assessment was paid in the first place by the individual

members of the Order in the State of Connecticut to their
local lodges, and by their local lodges to the defendant, for
the purposes of said Order and only for the purposes of
said Order, to wit: for the payment by the individual
members of the Grand Lodge of Massachusetts of their
equitable share of the liabilities of said Grand Lodge in-
curred and due by said Grand Lodge of Massachusetts
prior to the separation of the Connecticut members of the
Order into the Grand Lodge of Connecticut.  22. By the
constitution and general laws of the Supreme Lodge of
the Order, it was provided, and had been provided for
many years prior to the separation of the Grand Lodge of
Connecticut from the Grand Lodge of Massachusetts, that
grand lodges might be set apart from the Supreme Lodge
as separate beneficiary jurisdictions, and in such cases it
was provided that 'said Grand Lodge shall not be entitled
to any surplus which may remain in the Beneficiary Fund
of the Supreme Lodge after paying the beneficiary claims
arising prior to the date of separation.'  23. By the con-
stitution and general laws of the Supreme Lodge it was
provided, and had been provided for many years prior to
1901, that calls and assessments should be made as follows:
'Calls and Assessments.  Whenever the Beneficiary Fund
in the Supreme Lodge treasury shall have been reduced
to a sum less than two thousand dollars, or when, by rea-
son of unavoidable delay in the payment of beneficiary
claims the balance of Beneficiary Fund in the Supreme
Lodge treasury would, by the payment of said claims, be
reduced to a sum less than two thousand dollars, then it
shall be the duty of the Supreme Recorder to call upon the
Subordinate Lodges to forward the Beneficiary Fund in
their respective treasuries, and, at the time of making
such call, to make one assessment upon each member of
the Order who received the Workman degree previous to
the date of the death upon which the assessment is made.
Calls, when and how made.  Every call made upon Sub-

ordinate Lodges to forward Beneficiary Funds shall be dated upon the first day of the month; shall contain a list of all deaths occurring since the last call was made which have been officially reported to and received by the Supreme Recorder; all necessary instructions relative to forwarding the funds called for, and shall, in every case receive the approval of the chairman of the Supreme Lodge Finance Committee. The issuing of such call shall constitute the making of an assessment.' 24. Under the provisions of said law of said Supreme Lodge for calls and assessments, the surplus which might remain in the Beneficiary Fund of the Supreme Lodge after paying the beneficiary claims arising prior to the date of separation of any Grand Lodge, could not exceed the balance remaining from the last assessment necessary for the purpose of paying the beneficiary claims arising prior to the date of separation. 25. The defendant was well acquainted with the aforesaid provisions of the constitution and general laws of said Supreme Lodge. 26. Under said constitution and general laws of said Supreme Lodge, various grand lodges had been set apart from said Supreme Lodge, as the defendant well knew. 27. It was the intention of the Grand Lodge of Connecticut, and of the officers representing said Supreme Lodge, in connection with the adjustment of the financial relations between the Grand Lodge of Connecticut and the defendant, that such adjustment should be made in a fair and equitable manner without giving any substantial advantage to the Grand Lodge of Massachusetts, or its members, as against the Grand Lodge of Connecticut, and its members, and it was the belief of the Grand Lodge of Connecticut, and of said officers representing the Supreme Lodge, that by the language used in the contract expressed in the aforesaid resolutions, the Grand Lodge of Connecticut did not relinquish, or agree to relinguish any interest in the Beneficiary Fund of the defendant except as to the surplus of the last assessment necessary

to pay death claims occurring prior to the date of separation, to wit: the surplus resulting from assessment No. 264; and that the contract was so understood by the defendant. 28. The defendant well knew the belief and understanding of the Grand Lodge of Connecticut and of the officers of said Supreme Lodge with reference to the meaning of said resolutions, as set forth in the preceding paragraph, and either used or intended to use the language of the contract contained in said resolutions in the sense intended by the Grand Lodge of Connecticut and the officers of said Supreme Lodge, or knew that the Grand Lodge of Connecticut and the officers of said Supreme Lodge supposed that the defendant intended to use such language in said sense; and yet notwithstanding such knowledge, the defendant failed to inform the Grand Lodge of Connecticut or the officers of said Supreme Lodge, that the defendant had any different understanding of the meaning of the contract from that of the Grand Lodge of Connecticut before the contract was made. 29. After the making of said contract the defendant refused to repay to the Grand Lodge of Connecticut the said sum of $11,763 collected by the defendant, as aforesaid, under assessment No. 265, and not needed for the payment of any claims for which the Grand Lodge of Connecticut was liable, as aforesaid, and set up the claim that the said sum of $11,763 was included in that surplus in the Beneficiary Fund of the defendant to which the Grand Lodge of Connecticut by said contract relinquished all claim. 30. By the last clause of the aforesaid contract 'the disposal of all other funds or property in possession of or held by the Grand Lodge of Massachusetts at the date of separation is to be subject to such arrangements with the Grand Lodge of Connecticut as may be made by the Grand Lodge of Massachusetts at a session thereof.' 31. No arrangements have been made between the Grand Lodge of Connecticut and the defendant with reference

to the funds and property held by the defendant, and referred to in the preceding paragraph. 32. Such funds and property so held by the defendant at the date of separation of the defendant from the Grand Lodge of Connecticut, were as follows: Charity Fund, $13,022.82; Trust Fund, $10,416.56; Building, 12 Walnut Street, Boston, assessed value $22,000; making a total of $45,439.38 or more. 33. The property described in the preceding paragraph equitably belonged to the members of said Order in the jurisdiction of the defendant prior to the date of separation. 34. The total number of members within the jurisdiction of the defendant prior to and at the date of separation was 56,865. 35. The total number of members within the jurisdiction of the defendant prior to the separation residing in the State of Connecticut, and transferred to the jurisdiction of the Grand Lodge of Connecticut at the date of separation, was 11,943. 36. Upon the separation of the Grand Lodge of Connecticut and the defendant, the Grand Lodge of Connecticut as the representative of the Connecticut members of the Order, became equitably entitled to $\frac{11,943}{56,865}$ of the aforesaid property amounting to $45,439.38 then held by the defendant, as aforesaid, amounting to $9,543.36. 37. The defendant paid to the Grand Lodge of Connecticut the sum of $4,771.68 on account of said Grand Lodge's interest in the aforesaid fund, and has refused to pay the balance amounting to $4,771.68. 38. The Grand Lodge of Connecticut, at the time of its separation from the defendant, was unincorporated, but became incorporated as the plaintiff on January 27, 1902, under the laws of this State under the plaintiff's corporate name, and the plaintiff thereupon as a corporation succeeded under the laws of the Order, to all the rights of the previous unincorporated Grand Lodge of Connecticut as the representative of the members of the Order within the jurisdiction of Connecticut. The plaintiff claims by way of equitable relief, a decree: (a) That the defendant pay to

the plaintiff the sum of $4,771.68, with interest from November 1, 1901. (b) If the court shall be of opinion that the amount received by the defendant from said assessment, No. 265, to wit: the sum of $11,763, is money to which the plaintiff is equitably entitled by the terms of said contract, that the defendant pay to the plaintiff said sum of $11,763, with interest from November 1, 1901. (c) If the court shall be of opinion that the plaintiff is not entitled by the terms of said contract to the amount received by the defendant from said assessment No. 265, to wit: the sum of $11,763, that said contract be reformed by the correction of the mistake in said contract in failing to express the intention of the Grand Lodge of Connecticut concurred in or known to the defendant, as set forth in the complaint, in providing for the relinquishment by said Grand Lodge of Connecticut of any interest in said beneficiary fund beyond the surplus arising from said assessment No. 264; and that the defendant pay the plaintiff said sum of $11,763, with interest from November 1, 1901."

*Edward A. Harriman*, for the appellant (plaintiff).

*William H. Ely*, and *Harrison G. Sleeper* of Boston, for the appellee (defendant).

PRENTICE, J. The plaintiff's complaint is met by a demurrer sustained, which assigns nineteen grounds of demurrer. In the defendant's brief these grounds are consolidated into four, which are stated as follows: first, the Texas corporation had no authority or power in the premises; second, the defendant had no power or authority under the laws of Massachusetts to enter into said contract; third, there was no consideration for the contract; fourth, the plaintiff has no cause of action against the defendant by reason of any contract, or claimed contract, set forth in the complaint.

The last three of the objections thus urged to the complaint are based upon an entire misconception of it. They rest upon the assumption that the plaintiff is seeking relief for the violation of some contract obligation which the defendant has entered into. That is not the gist of the action, and in so far as the complaint suggests the existence of any express undertaking on the part of the defendant, it is only as one of the incidents in the story told—a fact which it is conceived fortifies and strengthens the plaintiff's right to have the relief sought. The plaintiff asks for equitable relief only. It is none the less equitable because it is sought in the form of a money payment. The complaint attempts to set up a state of facts which entitles the plaintiff, as representing its members who were formerly members of the defendant, to the relief prayed for. It does not rest upon any contract between the parties, but upon the existence of relations and a series of facts and events which it says justifies it in its claim to an equitable proportion of certain funds in the defendant's hands, and this whether or not the parties ever entered into direct contractual relations with each other. The second, third and fourth of the consolidated reasons of demurrer are therefore inadequate to meet the situation presented by the complaint.

The remaining reason assigned for the inadequacy of the complaint calls for the further explanation of its meaning, found in the demurrer itself, as follows: "5. It does not appear that the Supreme Lodge of the Ancient Order of United Workmen had any authority or right to carry on its business in the State of Massachusetts, or, under the laws of Massachusetts, had any control over the Grand Lodge of the State of Massachusetts, or that the defendant ever recognized, or submitted to, the authority of the Supreme Lodge of the Ancient Order of United Workmen. 6. It does not appear that the Grand Lodge of Massachusetts, or its members or its beneficiaries, agreed to the separation

of the Grand Lodge of Connecticut from the Grand Lodge of Massachusetts."

A sufficient answer to this claim is found in the fact that the Supreme Lodge has never undertaken, as far as appears, to carry on any business in the State of Massachusetts; that it does appear that it had control over the Grand Lodge of Massachusetts in respect to the matter in which control was attempted to be exercised; that it does appear that the defendant recognized and submitted to the authority of the Supreme Lodge in that wherein authority was assumed; and that it appears that it was wholly unnecessary that the members or beneficiaries, who were the members, of the Grand Lodge of Massachusetts, should agree to the division of its territory which was made when the plaintiff was organized, in order that such division and organization should be effectual as to all parties concerned.

If we examine the complaint we learn that both the plaintiff and the defendant are subordinate bodies of the Ancient Order of United Workmen; that this Order is a fraternal insurance organization with a membership extending throughout the greater part of the United States; that the Order has a constitution and body of general laws for the conduct and government of its affairs; that the supreme representative authority is vested in a body known as the Supreme Lodge; that by authority of the Supreme Lodge, subject to the constitution and laws of the Order, Grand Lodges are organized and exist in such States, territories and districts as the Supreme Lodge may determine; that subordinate in turn to Grand Lodges are local lodges, within which are grouped the members of the Order; and that the constitution and general laws of the Order provide that the territory comprising a Grand Lodge having jurisdiction over more than one State may be divided by the Supreme Lodge.

Here we have outlined the familiar scheme of organization usually resorted to where bodies of persons, widely

scattered or numerous, are associated for a common pur-
pose.   The ultimate source of authority is found in the
individual members, who are gathered into the lowest
organic groups and exercise their right of government by
representative methods.   There is a body of organic law
which defines what the details of organization shall be and
the powers committed to the governmental agencies thus
created.   To this body of organic law the whole organ-
ization, its agencies of government and members, are alike
subject, and under it all the powers which are exercised
within and in the name of the organization are exercised,
and all its rights and privileges enjoyed.   This law, which
is the expression of the will of the membership, enters into
all the relations created by the organization and operates
to define and limit them and the rights and privileges
which the organization bestows.   By this organic law there
is created as a part of the chosen system of government a
representative body in which is reposed a supreme authority
as respects  organization, government, regulation and dis-
cipline, which is defined by the fundamental law.   Between
it and the individual units of membership are one or more
intermediate bodies, subordinate to the supreme body, also
existing by the fundamental law, and all exercising author-
ity (and in the event of two or more, gradations of au-
thority) which is conferred under and defined by that law.
These various bodies, supreme or subordinate, are in no
sense separate and independent.   They are only interre-
lated parts of a single, comprehensive, unified system exist-
ing as the result of the will of the membership of the gen-
eral body, under a common law which comes from that
membership, subject to a common authority created by
that membership, and seeking common ends which are the
concern of every member.

In the situation before us the organic law of the Order is
written in what is known as the constitution and general
laws.   The Supreme Lodge has been made the repository

of the supreme power defined by and subject to this law. The Grand Lodges are by the provisions of this law its subordinates in the scheme of government, and to a certain extent at least its creations. We have no means of knowledge afforded us in the complaint as to all the provisions of the constitution and general laws of this Order. But we are told that the Supreme Lodge has therein been given authority to divide the territory over which the defendant was given grand lodge jurisdiction prior to October 17th, 1901, and that suffices to inform us that the action of the Supreme Lodge which created the present situation was one in the execution of a power conferred by the will of the membership of the Order and in respect to a subordinate agency of the Order subjected by that will, which is the law of its being, to the exercise of that power. This, and not the laws of Massachusetts, is the source of the authority exercised.

The defendant seems to rely upon the fact that it has been incorporated under the laws of Massachusetts, as affording it an exemption from the operation of the laws of the Order, or at least that one with which we are now concerned. It is as difficult to see why this result would necessarily flow from the mere act of incorporation, regardless of its terms, as it is to discover how, if that was the result, it could retain its appointed place in the organization to which it belongs and serve its alloted purposes as an agency of that organization. It also relies upon certain statutes of that State regulating the operation of benefit insurance associations, as prohibitive of the exercise by the Supreme Lodge of the authority in question, with the results claimed for it. We have occasion later to notice that this reliance is not well placed.

The situation thus presented possesses striking analogies in many respects to that which frequently exists in general church organizations, where the individual church is the member of a larger body with gradations of authority

which finally rests in some central body or authority which has the general ultimate power of control, more or less complete, over the whole membership and its organized parts. Such an organization was under consideration in *Watson* v. *Jones*, 13 Wall. (U. S.) 679, and the principles there laid down as to the position and power of the central authority, and the conclusive effect which must be given to its action, have a distinct pertinence to the situation here presented.

This analysis of the conditions found in the organization of this Order has an important bearing upon several aspects of this case, but when considered in connection with the authority conferred upon the Supreme Lodge it establishes beyond question that when it took its action dividing the territory over which the jurisdiction of the defendant extended, and took from that territory the State of Connecticut and organized the Connecticut members of the Order into a newly-created Grand Lodge which should thenceforth have jurisdiction within the territory of the latter State and over the members of the Order who should be resident therein, and did no more, it was acting with respect to the internal affairs and concerns of the Order, and was in no sense carrying on business within the State of Massachusetts. Acting, as it did, pursuant to the organic law of the Order, its action was binding upon every subordinate body and individual member, and needed no assent on the part of the defendant to make it operative. If assent, however, were needed, it is to be found in the action of February 25th, 1902, recited in the complaint.

The complaint alleges that the Order is a fraternal insurance organization. The rights of its members are, accordingly, something more than that of social association. Rights of property are attached to membership. A foundation for the intervention of courts of equity is thus laid. *Rigby* v. *Connol,* L. R. 14 Ch. Div. 482. It also appears that the defendant has in its hands certain funds held for the

protection of its members in their pecuniary rights. These funds partake of the character of trust funds, and equity will therefore see that the trust is enforced. *Fawcett* v. *Iron Hall*, 64 Conn. 170, 184, 29 Atl. 614; *Burke* v. *Roper*, 79 Ala. 138; *State Council* v. *Sharp*, 38 N. J. Eq. 24, 27. The relation of the parties to each other as subordinate bodies of an Order of which the Supreme Lodge stands at the head, as already indicated, and with the powers and authority already indicated, is set up. It is alleged that the defendant, for more than twenty years prior to October 17th, 1901, had existed as an organized Grand Lodge forming a part of this system and having jurisdiction conferred upon it for grand lodge purposes by the authority which was over it and over the members of the Order resident in the New England States, and that among these were many residents of Connecticut; that on October 17th, 1901, while this situation continued, action was taken by the Supreme Lodge, to which attention has already been directed, dividing the territory embraced within the jurisdiction of the defendant and thereby separating from the defendant Grand Lodge the members thereof resident in Connecticut, many in number and gathered into local lodges, and organized such members and lodges into the plaintiff Grand Lodge thus newly created, and that this division and separation took effect November 1st, 1901. It is alleged that at this time the defendant had in its hands certain funds and property, enumerated in paragraph 32 of the complaint, which equitably belonged to the members of the Order within its jurisdiction as it was prior to the separation, and including, therefore, the Connecticut members; that it also held moneys which had been recently paid into what is known as the "Beneficiary Fund" by the members of the Order within the territory of the defendant, under a call issued by it pursuant to the rules of the Order, for the purpose of meeting anticipated death claims, and as the equitable payment of the individual members of their

equitable share of the liabilities of the defendant for bene-
ficiary claims due at the date of separation; that a consid-
erable sum was thus paid by the Connecticut members
who were organized into the plaintiff, and that said sum so
paid in and on hand was not needed for the payment of
death claims or beneficiary liabilities maturing prior to
said date, but enured to the benefit of the defendant
thereafter. These facts, more fully set out in the complaint,
are the essential ones of the plaintiff's claim for an equi-
table accounting. Other facts are alleged in aid of the case
thus presented, but the substance of the plaintiff's claim,
save in one respect hereafter noticed, is to be found in the
situation which is thus outlined.

The plaintiff says that under its allegations it is entitled
to represent the rights of its members who by the action of
the Supreme Lodge became separated from the defendant
Grand Lodge. We do not understand the defendant to
deny this proposition save as it, as an incident to its as-
sumption that the complaint is one upon a contract, urges
that the plaintiff, being a corporation organized in Jan-
uary, 1902, is not identical with the voluntary organization
made in October, 1901, and not the party to whom the con-
tract ran, and that therefore, in the absence of an allegation
of an assignment or transfer to it, it has no right, title or
interest in or to any of the funds in question which will
enable it to maintain the action. The allegations that the
newly-created Grand Lodge of Connecticut immediately
upon its creation became the representative of the Con-
necticut members of the Order, and that the Grand Lodge
of Connecticut, which before January, 1902, had been un-
incorporated, was then incorporated and thereupon, under
the laws of the Order, succeeded to all the rights of the pre-
existing voluntary organization, when read in connection
with the other allegations of the complaint, properly inter-
preted, dispose of this contention.

All the funds and property which the defendant, as a

benefit association, had gathered together prior to the separation and held at that time, were trust funds. They were held in trust for the purposes designated by the laws and rules of the Order, and every member had an interest therein of some kind. *State Council* v. *Sharp*, 38 N. J. Eq. 24, 27. The complaint alleges that this interest, as respects the funds and property enumerated in paragraph 32, was that of an equitable ownership. It was entitled to establish this fact, which might well be true, and to establish it by showing that they were held for the protection of the members as insurance beneficiaries, or for the security or prompt payment of the claims of the members as such beneficiaries. In the case of the beneficiary fund the allegations as to its purpose and use and the sources from which the moneys in it at the date of separation were derived, establish most directly the equitable interest therein of every member. *Fawcett* v. *Iron Hall*, 64 Conn. 170, 184, 29 Atl. 614.

When the separation was accomplished by the Supreme authority of the Order pursuant to power vested in it by its organic law, which defined and limited the relations of all the members and subordinate bodies to each other and to the Order itself, and the Connecticut members were gathered into a newly-created Grand Lodge, whatever equitable ownership or interest in the funds or property of the Grand Lodge of Massachusetts the members so separated had, would not, upon the facts alleged and in the absence of other facts which might put a different aspect upon the situation, be lost to them, but would go with them into their new relations. It is well settled in consonance with reason, that when individuals, or a portion of a corporate body, secede from the main body, they leave behind them all its rights and funds and can successfully urge no claim thereto. *Goodman* v. *Jedidjah Lodge*, 67 Md. 117, 126, 9 Atl. 13, 13 id. 627; *Smith* v. *Smith*, 3 Dessaus. Eq. (S. Car.) 557. But the situation presented by the allegations of the complaint is a radically different one.

The Connecticut members took no voluntary action. They were the subjects of the action of the Order to which they belonged and continued to belong. They were taken out of their former grand lodge associations and into others, by the power which was alike over them and over their former associations, and pursuant to the organic law of the Order, to which all concerned had become subject. The Grand Lodge of Massachusetts with which, by the commandment of the Order, they had been affiliated, had, in gathering its benefit funds, been simply a part of the machinery of the Order provided by its constitution and laws to carry out its purposes and the better secure its privileges to the members committed to its grand lodge jurisdiction. The trust which it was executing in respect to these funds was a trust being executed by it as an agency of the Order. To hold, under these circumstances, that the exercise by the Supreme Lodge of its authority to divide the territory over which a subordinate jurisdiction had been committed to the Massachusetts Grand Lodge, was attended with the result—in the absence, at least, of law or regulation of the Order to that effect or of other facts not appearing— of depriving the separated members of what had been in equity theirs and giving it to those who remained, would be the height of injustice and inequity—an injustice and inequity which the law will not sanction. *Merrill Lodge* v. *Ellsworth,* 78 Cal. 166, 20 Pac. 399, 400. Equity will see to it that such a result is not accomplished, and will accord to the separated members an accounting for the funds and property in the hands of the defendant at the time of the separation, in so far as they may be able to establish an equitable interest therein at that time.

The complaint sets out certain votes of the parties hereto, passed subsequent to the separation, by force of which it is said that they then, for the consideration of their mutual undertakings, agreed upon the basis upon which this accounting should be made, in so far as the moneys in the

beneficiary fund are concerned, and that upon this basis, in view of other facts alleged, the plaintiff is entitled to receive the amount of the payments of the Connecticut members made under call No. 265, to wit, $11,763. A question is presented as to the true interpretation of the language of the votes which express this claimed agreement. This question we have no occasion to consider, since it concerns only a portion of what the plaintiff claims to recover, and a reformation is prayed for in the event of an interpretation unfavorable to the plaintiff's contention.

It remains to notice certain of the reasons of demurrer, the consideration of which has not been directly involved in what has already been said, to discover if any of them, as addressed to the complaint rightly interpreted, contains a valid objection to the plaintiff's recovery.

One of them is to the effect that it does not appear that either the unincorporated Grand Lodge of Connecticut, or the plaintiff, has or ever had any authority to carry on its business in the State of Massachusetts, or that two thirds of the certificate-holders of the defendant ever consented to, voted to make, or ratified, the contract claimed to have been entered into between the Grand Lodge of Connecticut and the defendant. This statement involves an appeal to a statute of Massachusetts. 2 Massachusetts Revised Laws, Chap. 119, § 11. In so far as the doing of business is concerned, it is sufficient to observe that it does not appear that either the plaintiff or its unincorporated predecessor has ever undertaken to do business in Massachusetts, or that the doing of business within that State was or is involved in, or will result from, the division of the defendant's territory by the Supreme Lodge. In so far as the statute appealed to may be said to have, or have had, a wider application to the situation created by the division and to the rights of the Connecticut members, if it be assumed that the court might, upon demurrer, take judicial notice of the existence and provisions of foreign statutes not pleaded,

and thereupon determine what the law of such jurisdiction is, we are unable to discover in the statute to which we are referred anything which made the act of the Supreme Lodge, in dividing the territory over which jurisdiction for the purposes of the Order was for the time being confided to the defendant, a prohibited one, or which attempts to say that in such an event equity might not be done to all who were affected.

It is asserted that it does not appear that the defendant had any right, power or authority to pay over to the plaintiff any of the moneys collected from assessments, or to give to it any portion of the funds which the defendant held. It certainly does not appear that the defendant is absolved from the duty of rendering unto others that which belongs to them in right and equity, and that is enough.

The assertion of one of the reasons, that it does not appear that all the claims by reason of deaths occurring prior to November 1st, 1901, had been paid, possesses no significance. It does appear that, whether actually paid or not, the amount in which the plaintiff claimed a share represented a balance over and above the total amount of such claims. If the defendant has neglected to pay its matured obligations, that fact cannot stand in the way of the plaintiff's recovery.

As for the assertion of other reasons——that it does not appear that the funds and property belonging to the defendant were not held for the benefit of, and were not needed by the beneficiaries and certificate-holders of the defendant, were not held for the sole purpose of paying such beneficiaries and certificate-holders, and have not been expended and necessarily expended for the purposes of and under the contracts made by the defendant with its members——they do not go to the merits of the plaintiff's contention, since it does sufficiently appear that they were not, after the division, held for the benefit of its former Connecticut members, were not needed to meet any de-

mands in favor of such members thereafter accruing, or demands in favor of any members already accrued, and have not been expended in the satisfaction of such demands. It appears that in so far as they may have been held, needed, or used for the benefit or in the interest of its membership, that membership was exclusive of its former Connecticut members, and that whatever membership contracts were protected thereby or satisfied therefrom, those of the separated Connecticut members were not among them.

It is said that it does not appear that the defendant has ever refused to make arrangements with the plaintiff or its unincorporated predecessor for the disposal of the funds and property enumerated in paragraph 32 of the complaint, that it does not appear that the plaintiff or its predecessor ever attempted to make any arrangement with the defendant for the disposal of such funds and property or requested the defendant to make any such arrangement, and that it does not appear that the defendant has the power to make such arrangement. It is alleged, however, that the defendant, having paid one half of the amount claimed on account of these funds and this property, has refused to pay the claimed balance, and this is a sufficient averment of the defendant's delict. The matter of power has already been sufficiently noticed.

There is error, the judgment is set aside and the cause remanded with direction that the demurrer to the complaint be overruled and the case proceeded with according to law.

In this opinion the other judges concurred.