THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF CONNECTICUT *vs.* THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF MASSACHUSETTS.

Third Judicial District, Bridgeport, April Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, Js.

Prior to 1901 the New England members of the Ancient Order of United Workmen, a fraternal insurance organization with a large and extended membership, were under the jurisdiction of the Grand Lodge of Massachusetts; but in October of that year the Supreme Master Workman, in conformity with a resolution adopted by the Supreme Lodge in the preceding June, to which the representatives of the defendant had assented, and upon the petition of the members of the Order in this State, organized and set them off as a separate beneficiary group under the jurisdiction of the Grand Lodge of Connecticut, which thereupon became their representative; and at the next stated meeting of the Supreme Lodge, in June, 1902,

this action of the Supreme Master Workman was approved and a charter was issued to the plaintiff as of October, 1901. After unavailing efforts to adjust and settle the rights of the respective parties in and to the funds and other property in the hands of the defendant, the plaintiff brought this action for an equitable accounting, and the defendant demurred to the complaint. The trial court sustained the demurrer and rendered judgment for the defendant, and the plaintiff appealed. This court thereupon reversed the judgment and announced the law of the case as applicable to the questions then before it. Upon the subsequent accounting the contentions of each party were in part sustained and in part overruled, and each party appealed. *Held:*—

1. That inasmuch as there was but little difference between the questions first raised on demurrer and those presented by the finding of facts, the opinion of this court on the former appeal was practically decisive of the case.

2. That the course pursued looking to a separation, even if not strictly regular, had been approved by the Supreme Lodge and been recognized by the defendant as effectual, and therefore could not now be challenged by the latter.

3. That the separation was effected not by the wish or desire of the Connecticut members, but by processes conformable to and authorized by the governing law of the organization; and therefore the outgoing members were not in the position of seceders.

4. That the claim of the defendant, that it was supreme and independent in the conduct of its benefit insurance because the Order was not responsible for its acts in this particular, was not well founded; that, on the contrary, it was clearly acting as an agency or instrumentality of the body of which it had been made an organic part with assigned duties. Nor would the fact that in collecting and disbursing its moneys the defendant was subject to the laws of Massachusetts, render it supreme and independent.

5. That whether the defendant was in this respect an independent body or not, the plaintiff would be entitled to an accounting for its share of the assets left in the defendant's hands, upon a lawful separation effected otherwise than by the mere will and act of the outgoing members.

6. That in dividing the beneficiary fund pursuant to the written agreement of the parties, the sense or meaning attributed by all of them, at the time, to a particular word or expression therein, was to be given effect.

7. That equity called for equality in treating the members of each Grand Lodge, which could not be secured by permitting the Massachusetts members to appropriate the amount of the surplus in the beneficiary fund paid in by the Connecticut members, and requiring the latter to forego all benefit from such payments.

8. That other funds and property, of the agreed value of $45,438, de-

rived from a per capita tax of $1 each on all members within the defendant's jurisdiction, should be divided between the parties upon a per capita basis, there being nothing in the record to suggest a more equitable or different method of division.

9. That settlements made between the defendant and other Grand Lodges which had been set off before the separation of the Connecticut members, did not set any standard for the latter, even if the conditions were identical; and that the trial court erred in giving controlling effect to such settlements, thereby reducing the amount of the plaintiff's recovery on this item by one half.

10. That inasmuch as the parties themselves had agreed upon the value of the funds and property derived from the per capita tax, all facts bearing upon that subject were thereby removed from the field of discussion.

The mere fact that conflicting demands have been compromised, does not give rise to an implied admission by any party thereto, that the terms agreed upon do him justice.

Lawful service of process is not essential to confer jurisdiction where the defendant appears and contests the cause upon its merits.

In the interest of expedition, motions in this court to erase parts of the record upon the alleged ground of impertinence, and motions of a similar character, are not to be encouraged except when it appears that the interests of the parties cannot otherwise be as conveniently and effectively protected.

Argued April 20th—decided June 14th, 1910.

ACTION for an equitable accounting and for a recovery of the sums found to be due thereon, brought to and tried by the Superior Court in New Haven County, *Curtis, J.;* facts found and judgment rendered for the plaintiff for $11,763, with interest from November 1st, 1901, from which each party appealed. *Error on plaintiff's appeal; no error on defendant's appeal.*

*Edward A. Harriman,* for the plaintiff.

*Harrison G. Sleeper* of Boston, and *Edmund Zacher,* for the defendant.

PRENTICE, J.    The plaintiff seeks an equitable accounting by the defendant in the matter of certain funds and property held by the latter at the time when

its jurisdiction as a Grand Lodge of the Order of United Workmen extending over the members of the Order resident in. Connecticut and elsewhere was divided and the members resident in this State were separated therefrom and organized into an independent Grand Lodge and beneficiary jurisdiction. Its original complaint to secure that end was before us upon a former occasion, upon an appeal from a judgment rendered for the defendant after a demurrer to it had been sustained. *Grand Lodge* v. *Grand Lodge,* 81 Conn. 189, 70 Atl. 617. It, together with its prayers for relief, are there recited in full. We then held that upon the facts alleged the plaintiff was entitled to such an accounting. After the remand of the cause and a hearing upon the issues joined, the court found the facts, and, acting in harmony with our conclusion then expressed and the views announced by us upon the numerous incidental questions passed upon in reaching it, ruled that upon the facts established the plaintiff was entitled to the accounting asked for. It thereupon made the accounting, and. rendered judgment that the plaintiff recover the sum claimed by it from the amount in the defendant's so-called beneficiary fund, to wit, the amount of $11,763, being the amount paid in by the Connecticut members under assessment No. 265, with interest from November 1st, 1901; but that it could not recover any further sum by reason of the defendant's ownership of the other funds and property described in paragraph 32 of the complaint, for the reason that the defendant had already paid to the plaintiff the fair and equitable proportion thereof belonging to the latter's members at the time of separation.

Both parties have appealed. The defendant contends that there was error in holding that the plaintiff was, upon the facts found, entitled to any accounting at all, and, therefore, in the award to the latter of the $11,763

and interest; and the plaintiff, that there was error in denying its claim to a further payment by virtue of the defendant's continued ownership of the other funds and property referred to.

The demurrer before us at the time of the former appearance of the cause presented not only the ultimate question of the plaintiff's right to an accounting upon the facts averred, but all the claims now made as incidental to or involved in that question as related to those facts, so that we were then called upon to pass upon all the questions and claims now made in so far as the facts now found do not materially change their character or the aspects in which they are presented. We have no occasion, therefore, to review our former conclusions, except as claim is made that a changed condition of fact enters into the situation as now presented, to materially alter it. It is found that the allegations originally made have been substantially supported by the evidence in most respects. There are a few particulars in which this is not the case, and it is contended on the part of the defendant that these relate to matters of such significance and consequence that a different conclusion must now be reached by us as to the plaintiff's right to an accounting from that formerly expressed upon the situation as then presented. We have no other duty, therefore, with respect to this branch of the case than to inquire as to the soundness of this contention.

After the cause had been remanded, the plaintiff amended its complaint by substituting for the eighth paragraph thereof a series of paragraphs setting out at length the various steps which were taken in the division of the jurisdiction of the defendant, the removal from its jurisdiction of the then members of the Order resident in Connecticut, and the organization of the plaintiff as a Grand Lodge of the Order having juris-

diction, for grand lodge and beneficiary purposes, over the members of the Order residing in this State. The facts relating to this subject are found to have been as follows:—

At a stated meeting of the Supreme Lodge held June 20th, 1901, a resolution was adopted, with the assent of the representatives of the defendant, to the effect that upon a petition of the lodges located in and having a majority of the members of any State then under the jurisdiction of the Grand Lodge of Massachusetts, the Supreme Master Workman be authorized to organize and institute a grand lodge and separate beneficiary jurisdiction in such State and under such terms and conditions as in his opinion might be equitable to all concerned, upon the condition, however, that any grand lodge so organized should adopt the classified plan of assessments and the guaranty fund laws prescribed by the Supreme Lodge. Thereafter, lodges of Connecticut members, sufficient in number and membership to comply with the terms of this resolution, petitioned for the separation of the Connecticut members of the Order from the jurisdiction of the defendant, and the organization of a Grand Lodge of Connecticut to have jurisdiction over them, and forwarded the petitions to the Supreme Master Workman, who received them September 23d, 1901. The petition was granted by that officer, who thereupon issued a notice to all lodges in Connecticut of a meeting of their representatives to be held on October 17th, 1901, for the purpose of organizing and instituting a Grand Lodge of the Order having a Connecticut jurisdiction. A copy of this notice was sent to the defendant with a request that as many of its officers as possible be present. Pursuant to this notice the meeting was held, and thereat, and with the assent and co-operation of the principal officers of the defendant, the Supreme Master Work-

man organized and instituted the plaintiff as a Grand Lodge of the Order, with a jurisdiction over the members of the Order residing in Connecticut. The date of separation as a separate beneficiary jurisdiction was fixed as October 31st, 1901. The condition embodied in the resolution of June 20th, 1901, as to the adoption of the classified plan of assessments and guaranty fund laws, was conformed to by the plaintiff. At the next stated meeting of the Supreme Lodge, held June 18th, 1902, the action of the Supreme Master Workman aforesaid was approved and a charter issued to the plaintiff as of the date of its institution, October 17th, 1901. The separation of the plaintiff from the defendant as a separate beneficiary jurisdiction as of the date of October 31st, 1901, was also approved.

The course thus pursued was in conformity with the practice of the Order in such cases. The defendant never protested against the separation from it of its Connecticut members, and it thereafter conducted itself and its beneficiary affairs in all respects as though the new condition attempted to be created had been effectively created. It paid all liabilities for death claims arising from the death of Connecticut members prior to November 1st, 1901, and none arising afterward. After that date it made no calls upon Connecticut lodges, and in its sworn reports to the Massachusetts authorities, as required by law, it stated the number of its insured, excluding Connecticut members. It entered into negotiations immediately for the adjustment of the financial affairs of the two grand lodges resulting from the separation.

Upon these facts the defendant's claim is that the Connecticut members were not separated from it and organized as an independent grand lodge in accordance with the laws of the Order, and that therefore the reasoning of the court in the former opinion, based upon

the proposition that they were, is inapplicable to the situation as it is now disclosed. The only consideration urged in support of this claim is that the act of separation was the delegated act of an officer, and not the direct act of a stated meeting of the Supreme Lodge. The approval of the action of the Supreme Master Workman, which was given by the Supreme Lodge at a subsequent stated meeting, and the conduct of the defendant since the act of separation in recognition of it, render it unnecessary to inquire into the regularity of the original course of procedure. The separation certainly became an accomplished fact, and it became so through the operation of the machinery of the Order to which all belonged and by whose laws and lawful regulation and management all were bound in so far as its affairs were concerned, and the defendant is not in a position at the present time to assert the contrary.

Another claim which is urged upon us is, that since these recited facts show that the separation of the Connecticut members from the jurisdiction of the defendant was a voluntary one, in the sense that they asked for it, whereas it appeared from the allegations of the complaint as originally made that it was brought about by the action of the Order itself, all reason for holding, as we did upon the former occasion, that they carried with them into their new relations in the organization of the Order the right to share in the funds and property which the defendant held in trust for the purposes of the Order and in the interest of all its members subject to the defendant's Grand Lodge jurisdiction, disappears.

It is true that the action of the supreme authority of the Order in setting the Connecticut members off from the defendant's jurisdiction was invited by them through the action of their subordinate lodges, but that action was none the less, for that reason, that of

the Order and not that of the Connecticut members. It is still true, as we said upon the state of facts before us upon the demurrer, that these members "were taken out of their former grand lodge associations and into others, by the power which was alike over them and over their former associations, and pursuant to the organic law of the Order, to which all concerned had become subject." The distinction sought to be drawn in the former opinion between those who, having become separated from an organization to which they had belonged, left behind them all their right and claim to its funds and property, and those who did not, was one which brought into the former class those former members whose separation was accomplished by the force of their own will and action, and were thus in the position of seceders, and into the latter class those whose separation was, on the other hand, brought about through processes conformable to and authorized by the governing law of the Organization. In our opinion, in commenting upon the facts as then presented, we observed that the Connecticut members took no voluntary action. That statement, it is plain to see from its context, was not made as furnishing the test to be applied. It was rather a statement of a fact which served to emphasize the justness of the plaintiff's claim. The Connecticut members did not become separated from the Order. They were simply grouped differently for the purposes of grand lodge jurisdiction. The new grouping resulted from processes prescribed by the governing law of the Order, and by official action had pursuant to that law. They passed from the jurisdiction of the defendant as a subordinate agency of the Order into that of another similar agency, not by force of their wish to do so, or their prayer to that end, or their own action, but because, and only because, the supreme authority of the Order, acting within

the powers conferred upon it, took appropriate action to accomplish that result. The inequity of a determination that a change of grand lodge affiliations under such conditions is attended with the result that those who pass from one such subordinate agency to another become deprived of all that interest in accumulated funds and property which had been theirs, and those who are left behind become vested with it, is too apparent for argument and too gross for the law to countenance.

In the course of our reasoning in the former opinion, it was said that the trust which the defendant was executing with respect to the funds in controversy was one being executed by it as an agency of the Order. It is now contended that this statement, then justified by the allegations, is now shown to be unwarranted by the actual facts, and that any deduction therefrom was based upon a false premise. It appears that the defendant was a separate beneficiary jurisdiction within the organization of the Order, making collections for the payment of all death claims arising by reason of the death of members within its jurisdiction and being alone responsible for the payment thereof, and that the Supreme Lodge disclaimed all responsibility in these matters and took no action thereon. It is nevertheless true that its operations in these matters, and the trust which it exercised in respect to them, were performed and executed by it as an agency of the Order to which it belonged and of which it was a subordinate instrumentality. Its acknowledged position in the Order was that of a part of the latter's machinery— one of the subordinate instrumentalities through which the purposes of the Order were attempted to be carried out. Any attempt to assert for it independent supremacy and action must fail.

The Order is a fraternal benefit one. Membership

in it has attached to it, as a prominent and inevitable incident, benefit insurance. Membership without this feature is altogether foreign to its scope and purpose. There is no insurance, and there are no benefits, without membership. The controlling factor is membership, and that is, of course, subject to the regulation and control of the Order, which stands for the total membership in its organized capacity. To say that the defendant conducted an independent insurance business for which it was responsible to no outside power and as to which it was subject to no restraint, is to deny to it the place it was pretending to occupy, the service it was pretending to perform, and to place it in a false and inconsistent position which it will not be permitted to occupy.

The persons who, for purposes of their own, had chosen to associate themselves in an organized body designated The Ancient Order of United Workmen, were under the necessity of creating an organization, providing proper machinery, and prescribing rules of conduct. In so doing it was their pleasure to retain in the Supreme Lodge the supervision and direction of its benefit service within certain States and territories, and in others to commit it to the local grand lodges. In the latter case they apparently provided, as they had the power to do, that any grand lodge in charge should have the full responsibility. In performing this service in this manner as provided by the law of the membership, a grand lodge was clearly acting as an agency or instrumentality of the body of which it had been made an organic part with assigned duties. The fact that by the consent of the membership, speaking through its prescribed channels, no responsibility was attached to any other part of the organism, or to the organization as a whole, for the acts or omissions of the grand lodge in respect to these matters committed to it, did not

forbid this situation. Neither would the fact, as in the present case, that in collecting and disbursing its moneys it was subject to the laws of its State. Its right to make these collections would not in such case grow out of any contract relation between those from whom they were sought and it, but of the fact that these persons were members of the Order of which it claimed to be an organic part, and that it was acting in view of that membership to secure to them the benefits attached to it. Its disbursements for death claims would be made in the same way and to the same end. The contract upon which this defendant's action rested was one which had its foundation in membership in the Order, and its action thereon was that of an agency of the Order.

The other objections, presented by the appeal, to the trial court's conclusion that the plaintiff was entitled to the claimed accounting, are but repetitions of those which were passed upon when the case was formerly here, and no new aspect is given to them by any change in the situation as then presented.

Passing now to the accounting made by the court, we find that objection is made to any award to the plaintiff, upon the ground that there had been an accord and satisfaction. This objection cannot be entertained, for the reason that the defendant did not lay a foundation for it in its pleadings. Accord and satisfaction must be pleaded. Rules Under the Practice Act (1908, p. 250), § 160; *Fogil* v. *Boody*, 76 Conn. 194, 196, 56 Atl. 526. The failure to thus plead, however, has deprived the defendant of no right, as the facts shown, which need not be recited, do not disclose that there was an accord and satisfaction.

The defendant's beneficiary fund which is involved in the present controversy was a fluctuating and uninvested one, which was established for the payment of

death claims as they accrued, and from it such claims were paid. It was maintained by payments made by the members of the Order within its jurisdiction, in response to calls therefor issued by the Grand Recorder, an officer of the Grand Lodge, to the subordinate lodges. These calls were regularly issued on the first or second day of each month, and were for such payments by the members as it was anticipated might be necessary to provide a sufficient fund on hand to meet the demands upon it as they should become due. They required the members of each lodge to pay to its treasurer, on or before the 28th of that month, the amount due from them, upon the penalty of a forfeiture of membership, and the treasurer to forward to the Grand Recorder, on or before the 9th of the month, the amount in his hands which had been paid to him on or before the 28th of the previous month in response to the call of that month. The result was that assessments called for on the first of each month were paid to the treasurers of the several subordinate lodges on or before the 28th of that month, and turned over to the Grand Recorder on or before the 9th of the following month. Special calls, as required to maintain the fund in a condition to meet accruing claims as presented, were made in a similar manner.

November 1st, 1901, the defendant had in this fund the sum of $2,945.27, received by it as the result of call No. 264, issued September 2d, which has never been required to pay claims which accrued prior to the former date. The balance of the fund then on hand was represented by the returns from call No. 265, issued October 1st, of which the Connecticut members paid in $11,763. This was the amount collected by the lodge treasurers in September, and it was paid over by them, pursuant to call No. 265, on or before October 9th. No portion of the proceeds of this call has been required

for the payment of claims resulting from deaths prior to November 1st.

The plaintiff, at its meeting October 17th, 1901, adopted certain resolutions looking to an adjustment and settlement of the financial situation presented by the separation, and embodying a basis therefor. These resolutions were prepared by the officers of the Supreme Lodge and proposed by the Supreme Master Workman as furnishing an equitable basis for such adjustment and settlement. In them the disposition of two funds not now in question was provided for. With respect to the beneficiary fund it was proposed that the plaintiff should be responsible to the defendant for all calls made necessary by deaths occurring on or before October 31st, 1901, that all death claims arising in the plaintiff's jurisdiction on or before that date should be paid by the defendant, that all arising therein after that date should be paid by the plaintiff, and that the plaintiff should not be entitled to any portion of the surplus remaining in the defendant's beneficiary fund after the payment of claims as above provided. These resolutions were presented to the defendant and adopted by it February 26th, 1902. The officers of the Supreme Lodge in preparing them, and the plaintiff in adopting them, understood and believed that by the "surplus" in the beneficiary fund, as that term was used in them, was meant any surplus remaining from the last assessment-call necessary to pay death claims arising prior to the date of separation, and that any surplus which might be created by a call which was not necessary to satisfy such claims was not within its meaning; and the defendant, when it approved them, well knew this fact and employed the language in which they were couched in that sense and with that intended meaning.

Certain of these facts were contained in the complaint

when it was before us upon the demurrer, but we had no occasion to pass upon the questions involved. 81 Conn. 209. The plaintiff concedes that the resolution forbids it to make a claim to any portion of the surplus remaining from call No. 264, but it does claim the return to it of the $11,763 paid in to the defendant's fund by the Connecticut members in consequence of call No. 265. The defendant urges that the adjustment and settlement embodied in the resolutions referred to deprive the plaintiff of all right to an accounting for that sum. It is clear that the court, upon the facts recited as to the meaning which both parties attached to the language in which they were couched, and their intent in passing them, was right in denying this claim.

It has been suggested in answer to the claim of the Connecticut members—represented by the plaintiff—to share in this sum, that they have had the full benefit of their payments which went to make it up, since their membership in the Order, their property interests attending it, and their right to participate in the councils of the Order, which was in fact subsequently exercised, did not become forfeit, but were preserved to them. The Massachusetts members received precisely this same benefit by reason of their payments at the same time. So far both classes of members stand upon an equal footing. It is difficult to see how that equality is to be preserved by now permitting the Massachusetts members to appropriate the amount paid in by the Connecticut members, and requiring the Connecticut members to forego all benefit of it.

In this connection the defendant presents again its contention that in respect to these benefit matters it was acting in an independent and supreme capacity, and not as an agency of the Order. It would not help it, if this were true, save as that fact might have a bearing upon the question of the character of the separation

which took place. A lawful separation, otherwise than by the will and act of the outgoing members, being admitted, the right on the part of the latter to an accounting for their proper share of the assets left behind them would follow, whether the defendant be regarded as an independent body or a subordinate subdivision of a larger body of which it was an organic part.

The plaintiff appeals from the refusal of the court to award to it any sum on account of the funds and property described in paragraph 32 of the complaint. These funds and this property were derived from a per capita tax, on members within the defendant's jurisdiction, of $1 each, and the interest on their deposit. The parties upon the trial conceded that the fair value of these assets for the purposes of the cause was $45,438.38. Divided upon a per capita basis as of the time of the separation, the share thereof which would belong to the Connecticut membership would amount to $9,543.36. One half of this amount was voluntarily paid to the plaintiff in March, 1902. It now claims the balance. The court ruled that the plaintiff was entitled to an accounting as to these funds and this property, but upon making the accounting found that the amount already paid constituted its fair and equitable proportion of them.

Presumably all of the members of the Order within the jurisdiction of the defendant prior to the separation had an equal interest in these assets, and there is nothing to disclose the contrary. Prima facie, therefore, those who were set apart into the jurisdiction of the newly-formed plaintiff were entitled to share in them upon a per capita basis. There are no facts which disclose that they, either at the time of the separation or afterward, waived or surrendered any right in this respect which was theirs. If reasons exist for a division upon any other basis than a per capita one, they

must have arisen from some circumstance or circumstances of the situation which made it apparent that equity and good conscience called for it.

The court seems to have been controlled, in arriving at its conclusion that the outgoing Connecticut members were equitably entitled to no more than their per capita share of one half of these assets retained by the defendant, by the significance it attached to the following history: In July, 1901, the members of the Order resident in Maine and Rhode Island, who had been under the jurisdiction of the defendant, were set off from it and formed into separate grand lodges with separate beneficiary jurisdictions, under conditions like those attending the separation of the Connecticut members three months later. Resolutions providing for an adjustment of the financial interests resulting from these divisions of the defendant's territory, similar to those we have had occasion to consider, were then adopted. After negotiations between the executive committees of the three bodies, that of the defendant reported that the retiring members were in each case prepared to accept in settlement of their interests in the assets in question, valued as they are now, their per capita share of one half thereof, and recommended that such settlement be authorized. This recommendation was adopted, and the settlement made upon that basis. Representatives from all but two of the Connecticut lodges participated in the action adopting the recommendation, and by their vote concurred in it.

It cannot be said that the settlement which these grand lodges may have been willing to make, or may have regarded as fair and equitable, sets any standard for a subsequent settlement between different parties, even if the conditions were identical. There is nothing from which an obligation can be created to accept such a settlement in the event that the participants in the

vote should become involved in a similar controversy. The conditions of an estoppel are not present. The court in its finding has characterized the conduct of the Connecticut representatives in voting in the meeting of the defendant Grand Lodge in favor of the terms of settlement with the Maine and Rhode Island grand lodges as an admission that they were fair and equitable under the circumstances, and it is this conclusion which seems to have actuated it in making its determination that they were so for the present situation, which, it found, presented the same circumstances. It may well be doubted whether it can be said of any settlement of conflicting demands, which may be the result of compromise, that there may be fairly implied from the fact of settlement alone an admission by the parties or either of them that its terms do justice to them. In so far as that may be the case, it is certainly only the grand lodges of Maine and Rhode Island to whom there could be imputed in the present settlement any admission that no more than one half of their apparent interest was a fair measure of their due. As against the defendant and those who participated in its vote, it could not be said that its acceptance of the proposed terms implied a greater admission than that what was agreed to be paid was justly due. To go further would be to say that there results from every compromise or settlement a presumption that each party is satisfied that its rights have been obtained and that exact justice has been done. We think that the court was in error when it attached the significance it did to the former settlement, and that it erred in so far as it found, for that reason, that a fair accounting for the assets in question had already been made. We do not forget, in this connection, that the court has found that the Connecticut representatives by their vote approved of the settlement as a fair and equitable one. The only evi-

dence supporting this statement, in so far as it may be said to impute a belief in the fairness of the terms, is that which we have already discussed, and it is plain that the court here stated the inference which it mistakenly drew from the fact of the vote alone.

In a memorandum upon the plaintiff's motion for a correction of the finding, the court has suggested, as a reason why the plaintiff's claim for a per capita division of the entire amount of the agreed value of the assets should be denied, the fact that among them was a building in Boston which was occupied by the defendant as its headquarters, and its furnishings. If there were any facts connected with the ownership of this property arising from its suitability or unsuitability for the defendant's uses under the new conditions, or its availability or unavailability for productive purposes, their consideration belonged to that branch of the case which dealt with the valuation to be given to the property retained by the defendant for the purposes of the division. That subject was removed from the field of discussion when the parties agreed upon it. It is to be presumed that they took into consideration all the pertinent factors of the situation when they reached their agreement.

We are unable to discover in the finding any other grounds for the conclusion reached by the trial court, that the plaintiff was not entitled to share in the fund and property now in question upon a per capita basis, as was its prima facie right.

The defendant has asked for a correction of the finding, by striking out certain paragraphs and by inserting others. In so far as these requests relate to matters which are not immaterial, or to conclusions of law from the facts found and therefore reviewable upon the finding as it is, the evidence furnishes no ground for the corrections sought.

After final judgment had been rendered, the defendant filed a motion in the Superior Court to strike the case from the docket for want of jurisdiction, which was properly denied. The claim made in support of the motion was that lawful service had not been made. As the defendant upon the return of the cause promptly appeared, and has for nearly three years been actively contesting it, the motion, regardless of the time when it was made, presented no debatable question. *Platt* v. *New York & Boston R. Co.*, 26 Conn. 544, 575.

The denial of this motion having been assigned as a reason of appeal, the plaintiff filed in this court a motion to erase from the record below the motion, and the action of the trial court upon it, and from the reasons of appeal, as impertinent, the reason of appeal, based upon its denial.

The irregular character of the proceeding in the lower court and upon the appeal, and the anomalous situation presented by it, are apparent. We, however, denied the motion, upon the ground that it was in the interest of expedition that motions of this and similar character should not be encouraged, except in situations wherein it appears that the interest of the parties cannot be as conveniently and effectively protected without a resort to them, as by their aid.

There is no error upon the defendant's appeal, and error upon the plaintiff's, and the judgment is set aside and the cause remanded for the rendition of a judgment in favor of the plaintiff for the sum of $16,534.68, with the interest thereon from November 1st, 1901.

In this opinion the other judges concurred.