[No. 10903.   Department Two.   July 12, 1913.]

GRAND COURT OF WASHINGTON, FORESTERS OF AMERICA *et al.*,
*Respondents*, v. CHARLES A. HODEL *et al.*,
*Appellants.*[1]

BENEFICIAL ASSOCIATIONS—PROPERTY—SECESSION OF LODGE. The property and funds of a benevolent association which are required by the constitution and laws of the order to be held as a trust fund for specified purposes cannot, by a secession of a subordinate lodge receiving its charter from the general order, be diverted to other purposes without the unanimous consent of the members of the order.

Appeal from a judgment of the superior court for King county, Yakey, J., entered July 1, 1912, upon findings in favor of the plaintiffs.   Affirmed.

*J. D. Bauer*, for appellants.

*George H. Rummens* and *J. Henry Denning*, for respondents.

FULLERTON, J.—The Foresters of America is a voluntary benevolent and social association, having courts or lodges throughout the United States.   The highest court in authority is called the supreme court, which "is the source of all true and legitimate power and authority in the Foresters of America, wheresoever established."   Next in order are the grand courts, which possess certain defined powers granted them by the supreme court.   Lastly come the subordinate courts, which receive their charters from the grand court. The order is governed by a written constitution and laws enacted thereunder, which provide minutely for the collection of the revenues of the order and the purposes for which they may be expended; section 110 of the general laws relating thereto reading as follows:

"All property and funds of a court and their increment, shall be held exclusively as a trust fund for carrying on

[1]Reported in 133 Pac. 438.

the fraternal and beneficial features of the order, and shall not be expended for any other than those purposes, and the payment of the necessary expenses of a subordinate court and the order.  The funds may be invested from time to time, but such investment shall be made only in the stock of hall associations for the order, which associations shall be owned exclusively by the members of the order; bonds of the United States, state of Washington, building and loan societies under the control of the state building and loan commissioners, or deposited in savings banks, under the control of the state bank commissioners, or loaned on unincumbered real estate.  Neither the whole nor any part of the court property or money shall ever be divided among the members, and no gift thereof shall ever be made, except from the benevolent fund, and in accordance with the laws of the order.  Funds of the court shall never be loaned to any of its members.  In case a court from any cause shall cease to exist, or be suspended, or dissolved, or have its charter or dispensation revoked, or be surrendered, all the funds and property of the courts of whatsoever kind shall immediately and *ipso facto* revert to the grand court of the state of Washington, and shall be immediately surrendered and delivered up to the grand court officers, or agents authorized to receive the same."

The order has a subordinate court at the city of Seattle, known as Court Enterprise No. 3, which is within the territorial jurisdiction of the grand court of Washington.  On August 18, 1911, at a regular meeting of the subordinate court, a resolution was introduced to the effect that the local court secede from the order, and amalgamate with another fraternal order known as the Knights of the Golden West, which was then being organized.  The court fixed the next regular meeting as the time for voting on the resolution, and directed that notice be sent to each member in good standing notifying him of the introduction of the resolution, and that a vote would be taken thereon at the next regular meeting of the court.  · The court then had a membership in good standing of 203; it owned property and lodge fixtures of some value, had cash on hand in the sum of $387.67 and

owned local improvement bonds of the city of Seattle of the face value of $1,260.07. At the meeting named in the notice, August 25, 1911, about seventy of the members attended. The meeting was opened in ritualistic form and proceeded with the formal order of business until the appropriate order for the resolution was reached, when a vote was taken on the same. All of the members present except some five or seven, voted in favor of the resolution, whereupon the same was declared carried, and the members present and voting in the affirmative withdrew from the order and carried with them the money and property of the court.

At the meeting at which the vote was taken, the grand chief ranger of the grand court of Washington was present, and when the vote was announced, that officer, acting in his official capacity, suspended from the order the members voting for the resolution, and declared all the offices of the court vacant. At a later date, on a regular meeting night of the court, this officer, acting pursuant to the laws of the order, issued a dispensation, permitting the members of the court then present to hold an election for the purpose of filling the vacated offices. A new election was thereupon held and installed, and the persons so elected have since performed the duties of officers of the subordinate court.

This action was instituted by the grand court of Washington, and Court Enterprise No. 3, and certain of their officers and members, against the individuals carrying away the court's property, for the recovery of the same. Judgment went in the plaintiffs' favor in the court below, and this appeal was taken therefrom.

The principal contention made by the appellants is that a subordinate lodge in an order, such as the one in consideration here, may secede from the parent organization, if the majority of such lodge wills it, and may take with them the money and property of the subordinate lodge. But such is not the rule. All of the properties which this branch of the order, as a fraternal and benevolent organization, had

gathered together were trust funds in the sense that they were collected for particular uses. They were held in trust for the purposes designated by the constitution and laws of the order, and every member of the order has an interest in the fund to the extent of seeing that it is appropriated to the uses for which it was collected. No number of the members of the order less than the whole could, therefore, divert the funds to other uses than the uses defined in the constitution and laws of the order. The majority of any subordinate court can undoubtedly direct the use of the funds of the order for purposes of the order, and when there are two or more purposes for which the funds can be lawfully used, may select between them, but the majority cannot, against the will of the minority, lawfully divert such funds for uses other than those permitted by the constitution and laws of the order. This, as we understand the authorities, is the universal rule. *Smith v. Pedigo*, 145 Ind. 361, 33 N. E. 777, 44 N. E. 363, 19 L. R. A. 433; *Mt. Zion Baptist Church v. Whitmore*, 83 Iowa 138, 49 N. W. 81, 13 L. R. A. 198; *Ferraria v. Vasconcellos*, 31 Ill. 25, 54; *Stebbins v. Jennings*, 27 Mass. 171, 181; *Nance v. Busby*, 91 Tenn. 303, 18 S. W. 874, 15 L. R. A. 801; *Grand Lodge, A. O. U. W. of Connecticut v. Grand Lodge, A. O. U. W. of Massachusetts*, 81 Conn. 189, 70 Atl. 617; *Knights of Pythias v. Germania Lodge No. 50*, 56 N. J. Eq. 63, 38 Atl. 341; *Schubert Lodge No. 118, K. P. of New Jersey v. Schubert Kranken Untersturzen Verein*, 56 N. J. Eq. 78, 38 Atl. 347; *Watson v. Jones*, 13 Wall. 679; 2 Beach, Private Corporations, §§ 908, 910.

Sometime after the institution of Court Enterprise No. 3, an attempt was made to incorporate the court under the statutes relating to the incorporation of fraternal societies. It may be questioned, we think, whether the proceedings were sufficiently regular to accomplish the purposes intended. But were the facts otherwise, the rule with relation to its property would not be changed. Its funds would still be trust funds, subject to such disposition as the laws of the order

permitted to be made of them, and could not be diverted to a use contrary to such laws without the unanimous consent of the members of the order.

The judgment is affirmed.

MAIN, MORRIS, and ELLIS, JJ., concur.