GRAND COURT OF MICHIGAN, FORESTERS OF AMERICA, *v.* COURT GERMANIA NO. 1, GERMAN-AMERICAN FORESTERS.

INSURANCE—MUTUAL BENEFIT ASSOCIATIONS — SECESSION — DIVERSION OF FUNDS FROM INTENDED PURPOSE.

Upon the secession for cause of a subordinate court chartered by the Grand Court of Foresters of America, the cause alleged being a substantial change in the government and policy of the main body, whose charter provided that money of the subordinate courts should be forfeited to the Grand Court, in case the lower body was found guilty, etc., the funds of the seceding body, that was found by the trial court to be justified in withdrawing, were rightly retained by the local court, where, by the charter, the fund was raised wholly through voluntary contributions of the lodge and the superior court contributed nothing to the fund and had no interest in it.[1]

[1] As to right, upon dissolution of benefit association, or local branch thereof, to funds voluntarily accumulated by the branch, to be expended solely for the benefit of its members, see note in 15 L. R. A. (N. S.) 336; and as to right to property of local branch of benefit society in event of secession or attempted secession, see note in 47 L. R. A. (N. S.) 927.

Appeal from Wayne; Lamb, J., presiding. Submitted April 20, 1916. (Docket No. 70.) Decided July 21, 1916. Rehearing denied December 22, 1916.

Bill by Grand Court of Michigan, Foresters of America, a mutual benefit insurance association, against Court Germania No. 1, German-American Foresters, and others for an accounting and other relief. From a decree for defendants, complainant appeals. Affirmed.

*Jonas B. Houck* (*Brakie J. Orr*, of counsel), for complainant.

*Zimmer & Chedester*, for defendants.

Complainant, the Grand Court of Michigan of the Foresters of America, a Michigan corporation, having authority by charter from the Supreme Court of the Foresters of America, instituted and chartered Court Germania No. 19, Foresters of America. On or about November 1, 1913, Court No. 19, by unanimous vote, seceded and surrendered its charter to the Grand Court because of certain changes in the government of the order made by the Supreme Court. On the same day Court No. 19 unanimously voted to become members of Court Germania No. 1, German-American Foresters, and to transfer its funds to said Court No. 1.

In the Order of Foresters there are three courts: (1) The Supreme Court; (2) the Grand Court, which receives its charter from the Supreme Court; (3) subordinate courts, receiving their charters from the Grand Courts. Each Grand Court has a "Grand Court Funeral Fund," to which each subordinate court may belong and pay 25 cents for each member per quarter. Court No. 19 did not belong at the time of its dissolution, nor had not for some time previous belonged, to "the Grand Court Funeral Fund."

According to the constitution governing subordinate courts, all receipts for initiation fees and dues were to be placed in a "General Fund," this money to be used by such subordinate court to pay sick and funeral benefits, salaries of officers, etc. At the time of its dissolution Court No. 19 had in its "General Fund" $3,882, which was turned over to Court No. 1. According to a clause in the constitution governing all of the courts, any court may be dissolved for bad conduct, etc., and any money, regalia, etc., belonging to such court shall be forfeited to the Grand Court, and placed in the "Grand Court Sick and Funeral Fund." When Court No. 19 voted to disband and return its charter the Grand Court placed Court No. 19 on trial for improper conduct, found it guilty, dissolved same, and declared all funds and effects of said court forfeited to the Grand Court.

The funds of Court No. 19 at its dissolution were placed in the Penobscot safety deposit vault, Detroit, Mich., and the uniforms, regalia, etc., turned over to Court No. 1. The officers of Court No. 19, when installed, took an obligation to abide by its rules, and to turn over to successors, or to some person duly authorized to receive same, all money, books, and property of the court in their possession. Every candidate for membership obligated himself to abide by the rules of the order.

It was the contention of the plaintiff that the defendant was guilty of misappropriating said funds by not observing the rules in the constitution governing said Court No. 19, and that said court was therefore liable to plaintiff. Defendant claimed that, as the fund in question was created wholly from the voluntary payments of members of Court No. 19, and for the express benefit of such members, they could not be deprived of its beneficial use upon secession.

The circuit court decreed that Court No. 19 was jus-

tified in seceding and surrendering its charter because of the course taken by the Supreme Court in amending the constitution in 1913, such amendments being subversive of the best interests of said Court No. 19, and that the fund in question, raised voluntarily by its members, was by implication a trust fund, for the sole use and benefit of the members of said court, and that it was just that they should retain same, as members of Court No. 1. From this decree plaintiff appeals.

BROOKE, J. (*after stating the facts*). The authorities bearing upon the question at issue are not harmonious. It is the plaintiff's contention that, even though the fund in question was raised wholly from voluntary payments made by the members of Court No. 19, it was so raised under the constitution and by-laws of the order, and, upon the dissolution of Court No. 19, became the property of the Grand Court by operation of law under the constitution of the order. This view finds support in the following authorities: *Grand Lodge A. O. U. W.* v. *Grand Lodge,* 81 Conn. 189 (70 Atl. 617) ; *Koerner Lodge K. of P.* v. *Grand Lodge,* 146 Ind. 639 (45 N. E. 1103) ; *Gross Loge D. O. H.* v. *Brausch,* 256 Ill. 185 (99 N. E. 908) ; *Grand Court F. of A.* v. *Hodel,* 74 Wash. 314 (133 Pac. 438, 47 L. R. A. [N. S.] 927) ; *State Council O. U. A. M.* v. *Sharp,* 38 N. J. Eq. 24. There is, however, a line of authority holding exactly the opposite view. Outside the State of Michigan the leading case appears to be *State Council O. U. A. M.* v. *Emery,* 219 Pa. 461 (68 Atl. 1023, 15 L. R. A. [N. S.] 336, 12 Am. & Eng. Ann. Cas. 870).

The law of the case, if we follow our own decisions, seems to be settled adversely to the contention of the appellant. Upon principle the case of *Detroit Savings Bank* v. *Haines,* 128 Mich. 38 (87 N. W. 66), cannot be distinguished from the case at bar. There, as here,

the members of a subordinate fraternal body seceded and attempted to take with them the sick benefit fund; there, as here, the fund was raised wholly by the voluntary contributions of the members of the subordinate lodge; there, as here, the superior body contributed nothing to the fund and obtained its revenue entirely outside of the fund in question.

The by-laws relating to the Grand Court provide:

"The revenue of the Grand Court shall be from a per capita tax as may be determined by each Grand Court, for every member of a subordinate court within its jurisdiction; from a profit on all the goods sold by each Grand Court and from fines collected for violation of law paid to the management fund."

It is clear, therefore, that the Grand Court had no interest in this fund, unless a forfeiture was worked by the expulsion of Court No. 19 by the Grand Court. If forfeiture of the fund follows upon the secession and subsequent expulsion of Court No. 19 (and some courts unquestionably so hold), it results in a diversion of the fund from the purpose for which it was created; i. e., the payment of sick and death benefits to the members of Court No. 19 (now members of Court No. 1). We are satisfied that our holding in *Detroit Savings Bank* v. *Haines, supra,* should not be disturbed, and that the bill of complaint in the case at bar was properly dismissed.

The decree is affirmed, with costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.