[No. 27294. *En Banc.* December 29, 1938.]

LOCAL NO. 2618 OF THE PLYWOOD AND VENEER WORKERS OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA *et al., Appellants,* v. RAY TAYLOR *et al., Respondents.*[1]

[1]Reported in 85 P. (2d) 1116.

*Lester C. Voris* and *Shorett, Shorett & Taylor,* for appellants.

*Houghton, Cluck & Coughlin,* for respondents.

BLAKE, J.—In the spring of 1935, about three hundred fifty plywood workers in the employ of Aircraft Plywood Company and Elliott Bay Plywood Company, in Seattle, formed a voluntary association, for the purpose of applying to the United Brotherhood of Carpenters and Joiners of America for a charter under which they might organize a local union. A charter was granted to the applicants, designating their organization as "Carpenters Union No. *2618 of Seattle, Washington, Lumber and Sawmill Workers.*" The charter contained, among others, the following provision:

"It is hereby agreed in the acceptance of this Charter, that the aforesaid Union shall conform to the Constitution, Rules and Regulations . . . And further it is agreed that should the aforesaid Union withdraw or be dissolved, suspended, or forfeit this Charter, then all property, *monies,* books and papers shall become the property of the United Brotherhood."

Pursuant to the powers granted by the charter, the members of the association organized as Local No. 2618. Each member was required to take an oath, of which the following is a part: "You promise to abide by the constitution and laws and the will of the majority . . ."

By July of 1937, the local had about six hundred members. At a regular meeting, held July 22nd of that year, the members present (some two to three

hundred) unanimously voted to apply for a charter to International Woodworkers of America, which is sponsored by the Committee for Industrial Organization. The application was made, and the charter was granted.

At a regular meeting of Local No. 2618, held on August 26, 1937, it was resolved to disburse the funds in the treasury, amounting to three thousand dollars, as a "refund to the entire membership, share and share alike." Three members, Halliwell, Kent and Dixon, were designated trustees, charged with distribution of the moneys in accordance with the resolution. It was then resolved "to sever all connections with Carpenters and Joiners," and "to appoint a committee of four to take care of all books and return them to the Carpenters and Joiners." A motion was then made "to adjourn this meeting forever at 10:40 P. M." The motion having been adopted, the persons present immediately convened and organized Plywood and Veneer Workers, Local No. 26, under the charter granted by the International Woodworkers of America.

In the meantime, on August 16, 1937, a petition, addressed to the United Brotherhood of Carpenters and Joiners of America, was signed by seventy-five members of Local No. 2618, asking that:

". . . the charter, funds and property of Local Union 2618 be turned over to said petitioners, in trust, for the benefit and use of those members remaining affiliated with the United Brotherhood of Carpenters and Joiners of America."

On August 30th, twelve members "remaining affiliated with the Brotherhood" attended a specially called meeting of Local No. 2618, and elected officers in the stead of those who had withdrawn. Meetings, with increasing attendance, have been regularly held ever since. In October, 1937, Local No. 2618 had eighty-

four members; at the time of trial, one hundred sixty-five.

At the meeting of August 30th, John L. Davis was elected president. He was authorized by resolution to take measures to recover the

". . . funds and properties of the Local Union [No. 2618] . . . to be used according to the constitution and by-laws of the United Brotherhood of Carpenters and Joiners of America."

The funds of Local No. 2618 having, for the most part, been disbursed in accordance with the plan adopted by the seceders at the meeting of August 26th, this action as for conversion was brought against Local No. 26, its officers and trustees, and against former officers and trustees of Local No. 2618 who had custody and control of its funds. From judgment in favor of defendants, plaintiffs appeal.

■ The cases of *Local No. 2508 Lumber & Sawmill Workers v. Cairns, ante* p. 476, 85 P. (2d) 1109, and *Lumber .& Sawmill Workers Union No. 2623 v. International Woodworkers etc., ante* p. 491, 85 P. (2d) 1099, are decisive of the issues presented here. In those cases, the court applied what seems to be a universal rule with respect to funds and property acquired by voluntary associations:

"No number of the members of the order less than the whole could, therefore, divert the funds to other uses than the uses defined in the constitution and laws of the order. The majority . . . can undoubtedly direct the use of the funds of the order for purposes of the order, and when there are two or more purposes for which the funds can be lawfully used, may select between them, but the majority cannot, against the will of the minority, lawfully divert such funds for uses other than those permitted by the constitution and laws of the order. This, as we understand the authorities, is the universal rule." *Grand Court etc. v.*

*Hodel,* 74 Wash. 314, 133 Pac. 438, 47 L. R. A. (N. S.) 927.

▮ The charter issued to Local No. 2618 constitutes a contract between its members and the United Brotherhood of Carpenters and Joiners of America. *Cox v. United Brotherhood of Carpenters etc.,* 190 Wash. 511, 69 P. (2d) 148. By the terms of the charter, the constitution and by-laws of the Brotherhood are a part of the contract. As pointed out in the cited cases, this day decided, the constitution, among other provisions, contains the following:

"A Local Union cannot withdraw from the United Brotherhood or dissolve so long as ten members in good standing object thereto . . .

"The funds or property of a Local Union cannot be divided in any manner among the members individually, but shall remain the property of the Local Union for its legitimate purpose while ten members remain therein."

It is apparent, therefore, under the facts disclosed by the record, that Local No. 2618 has never ceased to exist. That such stipulations as those above quoted are binding, and preclude seceding members from taking or dividing property of the association, is established by the authorities cited in the opinions this day filed in the companion cases, and will not be further discussed.

Neither is it necessary to discuss severally the cases cited by respondents to sustain the decision of the lower court. We shall, however, refer briefly to a group of cases upon which respondents seem to particularly rely. *State Council etc. v. Emery,* 219 Pa. 461, 68 Atl. 1023, 15 L. R. A. (N. S.) 336; *Independent Order of Foresters v. Donahue,* 91 Ill. App. 585; *Detroit Sav. Bank v. Haines,* 128 Mich. 38, 87 N. W. 66; *Grand Court etc. v. Court Germania No. 1,* 192 Mich. 380, 158 N. W. 832; *State Council etc. v. Enterprise Council No. 6,* 75

N. J. Eq. 245, 72 Atl. 19; *Scott v. Donahue,* 93 Cal. App. 126, 269 Pac. 455.

In each of these cases, a parent body was seeking to forfeit funds and property of a subordinate body. The parent body was denied recovery in each instance, either upon the ground that it had no interest in the fund under the constitution of the order, or that the constitution did not authorize seizure of the fund, or that the procedural steps for the dissolution of the subordinate body and the seizure of its funds were not complied with. In all but two of these cases, the validity of governing laws, such as we are now considering, was either explicitly or implicitly recognized.

With the exception of the Michigan cases, it was upon the absence of, or non-compliance with, such provisions in the governing laws of the order that the decision in each instance turned. While the Michigan court refuses to give force to such provisions of the governing laws of the order as to funds raised for local purposes, it cites as authority for its position *State Council etc. v. Emery, supra,* in which the validity of provisions such as we have under consideration is recognized. (As of passing interest, it may be noted that the case of *Grand Court etc. v. Court Germania No. 1,* 192 Mich. 380, 158 N. W. 832, cites our case of *Grand Court etc. v. Hodel, supra,* as holding to the contrary.) In any event, the Michigan cases are distinguishable, in that the parent organization was attempting to seize the funds for its own uses, while in the case at bar, the members of Local No. 2618 are trying to hold the funds for the use of the members of the local organization.

Respondents also put much faith in the case of *Shipwrights etc. Ass'n v. Mitchell,* 60 Wash. 529, 111 Pac. 780. It appears from the record in that case that the plaintiff association was organized in 1885 as an independent union, under the name of Shipwrights,

Joiners & Calkers Association of Seattle, Washington. As such, it adopted a constitution and by-laws for the government of its members. During the next twenty years, the association affiliated from time to time with various other similar groups. For four years prior to 1906, the association had been affiliated with the International Union of Shipwrights, Calkers & Joiners, as *Local No. 11*. In that year, the members of the association withdrew in a body, and affiliated with Pacific Coast Maritime Builders Federation, as *Local No. 2*. Some ten or eleven members also maintained membership in *Local No. 11*. The defendants Mitchell and Gordon were elected, respectively, president and treasurer of *Local No. 2*, to the credit of which there were on deposit in two Seattle banks funds in the amount of eleven hundred dollars. These funds, or a part of them, had been accumulated while the association had been affiliated with the International, as *Local No. 11*. Shortly after the association broke its affiliation with the International, the latter revoked the charter of *Local No. 11*.

In 1907, a minority of the members of the association, among whom were Mitchell and Gordon, desired to resume affiliation with the International. The charter was re-issued to *Local No. 11* in the summer of 1907. In August of that year, Mitchell and Gordon, although they had been ousted as president and treasurer, withdrew the funds on deposit to the credit of *Local No. 2*, and converted them to the use of *Local No. 11*. Defending an action in conversion, they sought to justify their withdrawal of the funds under the following provision of the constitution of the International:

"The funds, or property of the Local Union cannot be in any manner divided among the members individually, but shall remain therein. Should the Local Union dissolve, its books and papers shall at once be forwarded to the General Secretary and Treasurer."

It is clear that there was no violation of these provisions of the constitution of the International. There was no attempt to divide the funds or property. And, as pointed out in the cases of *State Council etc. v. Emery, supra,* and *Scott v. Donahue, supra,* the provision relating to the forwarding of books and papers to the general secretary and treasurer was not broad enough to include moneys. In other words, there appears to have been nothing in the constitution of the International to prevent the members of Shipwrights, Joiners, etc., from withdrawing as an entire body and taking their property with them. As we read it, the case falls within the same category as the other cases above mentioned, upon which respondents specially rely.

Furthermore, we think that, viewing the case on the facts, the decision is in harmony with the decision in *Grand Court etc. v. Hodel, supra.* For essentially, Mitchell, Gordon and their associates, in attempting to reorganize *Local No. 11,* were withdrawing from the original association, which was then established as *Local No. 2.* The court, in effect, held that, as withdrawing members, they had no right to take the funds of the association with them.

Relying upon the cases which we have particularly noticed, respondents argue that Local No. 2618 is not a regular local, in contemplation of the constitution of the Brotherhood; that the members of the local did not enjoy the same benefits as members of "regular" locals of the Brotherhood; that the funds in dispute were not raised pursuant to the constitution and requirements of the Brotherhood, but solely for the benefit of the members of the local union. To accept this argument as valid would be to ignore plain and unambiguous *obligations assumed by the members of Local No. 2618* when they accepted the charter and took the oath of

allegiance to the constitution of the Brotherhood. As against the members of the local union who have maintained their affiliation with the Brotherhood, the respondents cannot be heard to say the funds were not raised pursuant to its constitution and laws.

As the cause must be remanded for the entry of judgment in favor of appellants, the question arises: Against whom shall it run? Clearly, under the rule laid down in *St. Germain v. Bakery etc. Union,* 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F, 824, it may run against Local No. 26 and the individual respondents. But respondents urge that, since the action sounds in tort, the judgment cannot run against the communities of which the individual respondents are members. We think, however, that the case falls within the exception to the rule that a community cannot be held liable for the tort of one of its members. For, essentially, in their union activities, the respondents were engaged in furthering the welfare of their respective families. And had their position been sustained in this case, not only they, but their families, would have acquired measurable material benefits. *McGregor v. Johnson,* 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022.

The cause is remanded, with directions to enter judgment accordingly.

STEINERT, C. J., MAIN, MILLARD, ROBINSON, and SIMPSON, JJ., concur.

BEALS, J. (dissenting)—For the reasons stated in my dissent in case No. 27194, *Lumber & Sawmill Workers Union No. 2623 v. International Woodworkers etc., ante* p. 491, 85 P. (2d) 1099, I dissent from the conclusion reached by the majority in this case.

GERAGHTY and HOLCOMB, JJ., concur with BEALS, J.