[No. 27194.  *En Banc.*  December 29, 1938.]

LUMBER & SAWMILL WORKERS UNION NO. 2623 *et al., Appellants*, v. INTERNATIONAL WOODWORKERS OF AMERICA, LOCAL NO. 49, *et al., Respondents.*[1]

*Ronald Moore, Mitchell Doumit,* and *L. Presley Gill,* for appellants.

*Houghton, Cluck & Coughlin,* for respondents.

MILLARD, J.—On June 4, 1935, an unincorporated association of lumber mill workers in Lewis county

[1]Reported in 85 P. (2d) 1099.

obtained a charter from the United Brotherhood of Carpenters and Joiners of America, an international organization which was chartered by the American Federation of Labor. The local union became, under its charter, Lumber and Sawmill Workers Union No. 2623, of Centralia, Washington.

The members of the local union were classified as non-beneficial members; that is, the only financial obligation owed by the local union to the parent body which chartered it was a per capita tax of twenty-five cents monthly. Beneficial members are each required to pay seventy-five cents monthly dues to the Brotherhood and are entitled to admission to the home for the aged and to other fraternal benefits. The non-beneficial members are not entitled to those benefits.

The charter issued by the Brotherhood pursuant to the application of the local union therefor reads as follows:

"KNOW YE: All men by these presents, that acting under the authority vested in us by the laws of the above named organization, we the undersigned do hereby grant this Charter to a body of qualified Carpenters, who are to be hereafter known and designated as CARPENTERS UNION No. 2623 of Centralia, Washington Lumber and Sawmill Workers, to be held by them or their successors; and the aforesaid Union being properly installed is hereby authorized and empowered to transact business, and initiate into its membership any person or persons, lawfully proposed and elected, in accordance with the Constitution, Rules and Regulations of the

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA.

"It is hereby agreed in the acceptance of this Charter, that the aforesaid Union shall conform to the Constitution, Rules and Regulations, and in default thereof, this Charter may be revoked, and the Union be suspended from all rights and benefits according to the laws of the United Brotherhood. And

further it is agreed that should aforesaid Union withdraw or be dissolved, suspended or forfeit this Charter, then all property, monies, books and papers shall become the property of the United Brotherhood.

"In consideration of the due and faithful performance of the foregoing stipulations, the United Brotherhood does hereby bind itself to sustain CARPENTERS UNION No. 2623 of Centralia, Wash. in the exercise of all Right, Privileges and Benefits as a Local Union under its Jurisdiction."

Local 2623 functioned from the time of the issuance of its charter as a local union under the constitution and laws of the United Brotherhood of Carpenters and Joiners. It elected its own officers, fixed dues in excess of the twenty-five cents monthly per capita tax payable to the Brotherhood, held regular meetings, etc. The classification of non-beneficial membership, chosen and accepted at the time Local 2623 was chartered, was never changed or altered in any way. Upon joining the local union, each member took an obligation to abide by the constitution and laws of the Brotherhood. In addition to the oath of allegiance required of the members, all officers of the union, upon qualifying as such, took an obligation to uphold the constitution of the Brotherhood.

The pertinent provisions of that constitution read as follows:

"Section 6. The jurisdiction of the United Brotherhood of Carpenters and Joiners of America shall include all branches of the Carpenter and Joiner trade. In it shall be vested the power through the International Body to establish and charter Subordinate Local and Auxiliary Unions, District, State and Provincial Councils in all branches of the trade, and all other skilled employes working at the industry, and its mandates must be observed and obeyed at all times. . . .

"Section 7. The trade autonomy of the United Brotherhood of Carpenters and Joiners of America consists of the milling. . . .

"Our claim of jurisdiction, therefore, extends over the following divisions and sub-divisions of the trade: Carpenters and Joiners. . . .

"And all those engaged in the running of woodworking machinery.

"When the term 'carpenter and joiner' is used, it shall mean all the sub-divisions of the trade as herein specified. . . .

"Section 10. The General President shall issue and sign all charters, may grant dispensations in extraordinary cases. . . .

"C. Section 25. A Local Union cannot withdraw from the United Brotherhood or dissolve so long as ten members in good standing object thereto. . . .

"A. Section 42. There shall be four classes of membership, viz: Beneficial, semi-beneficial, honorary and auxiliary. . . .

"A. Section 58. The General Funds or property of a Local Union shall be used only for such purposes as are specified in the Constitution and Laws of the United Brotherhood and as may be required to transact and properly conduct its business, viz: Payment of salaries and donations to sick members; purchasing stationery, books, cards, printing, payment of rent, or any legally authorized bill against the Local Union. But under no circumstances shall any of the General Funds be used for loans or donations to members, Contingent Fund or for political or religious purposes. Violation of this Section subjects the offending Local Union to the penalty of suspension. . . .

"C. The funds or property of a Local Union cannot be divided in any manner among the members individually, but shall remain the property of the Local Union for its legitimate purpose while ten members remain therein.

"D. All moneys paid out of the funds of a Local Union, with the exception of per capita tax and cost of bonds of financial officers, must be by majority vote of the members, for which an order must be drawn on the Treasurer, signed by the President and Recording

Secretary, and stamped with the seal of the Local Union. No appropriation of money can be voted after 10:30 p. m."

Local 2623 acquired personal property consisting of furniture, books of account, and money. The local had a credit balance in its treasury, money in its "sustaining fund" which was to be placed in the hands of three trustees, money in a "funeral fund," and was entitled to receive from the employer of most of its members money withheld by the employer, upon their order, for the benefit of Local 2623.

In the spring of 1937, most of the non-beneficial unions of lumber and sawmill workers participated in a secret ballot on the question of setting up a new international union affiliated with the Committee for Industrial Organization. A large majority of the members of Local 2623 voted in favor of that change.

On July 20, 1937, the International Woodworkers of America, affiliated with the Committee for Industrial Organization, was formed. At a regular meeting August 13, 1937, of Local 2623, it was decided by a vote of seventy-eight to thirty of the members of Local 2623 to apply to the International Woodworkers of America for a charter.

At the regular meeting of Local 2623 on August 20, 1937, its officers were authorized to pay all outstanding bills, including per capita taxes due to the end of August payable to the United Brotherhood of Carpenters and Joiners of America and to the Grays-Willapa Harbors District Council of carpenters. A committee was appointed to send the charter, seal, and ritual of the International officers to the Brotherhood, and a motion was passed to adjourn without day. The members present reconvened as Local 49 of the International Woodworkers of America. The charter was installed and the officers were obligated under the new

ritual. All of the officers of Local 2623 continued with Local 49 as officers of the new organization. More than ten members of Local 2623 remained loyal to the United Brotherhood of Carpenters and Joiners of America.

About a month subsequent to the secession of 558 of the 581 members of Local 2623 to become members of Local 49 of the International Woodworkers of America, the group remaining loyal to the United Brotherhood of Carpenters and Joiners of America requested Local 49 to return the original charter of Local 2623 to them. The request was granted, and Local 2623 has continued to exist as a subordinate local of the United Brotherhood of Carpenters and Joiners of America under the charter granted to it June 4, 1935.

In October, 1937, this action was commenced by Local 2623 and three of its members for the benefit of all members of Local 2623 to require Local 49 of the International Woodworkers of America and the members of that local who had effected transfer of the money and property of Local 2623 to Local 49 to account for all property belonging to Local 2623 in defendants' possession. The cause was tried to the court, which found that Local 49 of the International Woodworkers of America was entitled to all of the money in the sustaining fund, in the funeral fund, and other items which were the property of Local 2623 at the time of the secession of its members to the new Local 49. The trial court further found that Local 2623 was entitled to the articles of furniture and the account books. Judgment was entered accordingly. Plaintiffs have appealed.

Counsel for respondents contend that Local 49 is the same local union as the former Local 2623, and as such is entitled to all the money and property formerly

held in the name of Local 2623. It is further contended on behalf of respondents that the provisions of the constitution and laws of the United Brotherhood of Carpenters and Joiners are not applicable to Local 2623 and its members, because it was not a "local union" within the meaning of that term as used in the constitution and laws of the Brotherhood.

The third position taken by counsel for respondents is that, even if Local 2623 were a "local union" within the meaning of the constitution and laws of the United Brotherhood of Carpenters and Joiners, the money is "local money," voluntarily raised by the members for their own purposes, therefore Local 2623 is not entitled to the return to it of the funds here involved.

Any question as to the binding effect upon the members of Local 2623 of the constitution of the United Brotherhood of Carpenters and Joiners of America under which Local 2623 was chartered is foreclosed by *Cox v. United Brotherhood of Carpenters etc.*, 190 Wash. 511, 69 P. (2d) 148. We there held that the constitution of the Brotherhood and the rules adopted thereunder form a contract between the association and its members. We said:

"The constitution of respondent Brotherhood and rules adopted pursuant thereto form a contract between the association, on the one hand, and its members, on the other. It is not contended that appellant local was not organized under the laws of the state of Washington, and that its members, as such an association, could not own property. Appellant local did own property, including over nineteen hundred dollars in cash, and enjoyed constitutional and statutory rights, which the law recognizes as valuable and entitled to protection. The membership rights of the members of the union are also valuable and recognized by law. The existence of appellant local was proven, as was its association with respondent Brotherhood. It was admitted that respondents assert that the charter of

appellant local was revoked, but respondents neither alleged nor proved that such attempted revocation followed any proceedings taken in accordance with the Brotherhood's constitution, by-laws or rules.

"Testimony introduced by respondents was largely to the effect that there was considerable dispute between different groups of union men as to the wisdom of the policy pursued by respondent Brotherhood and its officer, Mr. Muir. An attempt was made to turn over the funds which had been collected by appellant local to respondent Brotherhood, which claimed them as trustee for respondent locals. It does not appear that anyone made any attempt to appropriate these funds or exercise bad faith in allocating them. It is a question of absolute legal right. If the charter of appellant local was lawfully revoked, its property, including its cash, should have been turned over to respondent Brotherhood. If, on the other hand, no lawful revocation of the charter had been effected, the property and money should remain with the local.

"Respondents make much of the fact that many of the members who formerly belonged to appellant local joined one or other of respondent locals, but this cannot change the legal aspect of the situation, as, after respondent Brotherhood attempted to revoke its charter, appellant local naturally functioned under a serious handicap. . . .

"The evidence shows that great differences of opinion existed between different groups of the union men and between their local officers as to the best policies to be pursued in connection with the different problems in which they were interested during the year 1935. Assuming that all parties were in good faith trying to do the best they could to further the interests of the members of the union, we fail to find in the evidence any legal support for the action of respondent Brotherhood, its officers and agents, in declaring the charter of appellant local revoked. It must be held that this charter never was in fact revoked, and that appellant local still exists as a local union, entitled to possession of its property. The fact that it paid no dues to respondent Brotherhood is immaterial, as the

Brotherhood refused to recognize the local's existence."

In that case, the local affected was No. 2504, Lumber and Sawmill Workers of Kelso-Longview. It was an unincorporated voluntary association chartered by the United Brotherhood of Carpenters and Joiners of America, and its status was the same as that of Local 2623 in the case at bar.

The constitution of the Brotherhood and the charter issued pursuant thereto by the Brotherhood to Local 2623 constitute a contract of the members of the union. Under that contract, so long as ten members of the local union remain loyal to the parent body and object to the transfer, the property of the local union can not be transferred to another organization.

There was not a dissolution of Local 2623. True, most of the members of that local seceded and joined a rival organization, Local Union No. 49 of the International Woodworkers of America. By leaving Local 2623, they lost their interest in the property and funds of the local they abandoned, and those who remained loyal succeeded to that interest. We held in *Local No. 2508 Lumber & Sawmill Workers v. Cairns, ante* p. 476, 85 P. (2d) 1109, that a majority of the members of a local union—an unincorporated association like the one in the instant case—can not dissolve the local, transfer funds of the local to another union organized by a majority, or divide funds among members of the local, where constitution of parent union prohibits division of funds or property of local union among the members individually, so long as a minority of the old union continue their allegiance to the old parent union and continue to function under charter originally issued by old parent union. That case controls the case at bar.

The judgment is reversed, and the cause remanded with direction to the trial court to require return by respondents to appellants of the funds converted by respondents.

STEINERT, C. J., MAIN, BLAKE, ROBINSON, and SIMPSON, JJ., concur.

BEALS, J. (dissenting)—Generally speaking, cases like this fall into one or other of two classes: First, cases in which a subordinate lodge or local organization of some sort has raised money, either pursuant to a mandate from the parent organization, requiring that the subordinate group raise money for certain definite purposes, or when such a group has, on its own motion, raised money for some definite object, and it can be said that the money so raised has been earmarked for such purpose; and second, where it appears that the subordinate group has, on its own motion, raised money not required to be raised by the parent organization and not, by order of the local before the collection of the money, dedicated to some particular purpose.

In the first class of cases, it has been uniformly held that a mere majority of the local organization cannot divert the funds from the purpose for which they were raised; while in the second class of cases, it has generally been held that such funds remain subject to the will of the local organization, as expressed by the majority of its members, subject always to the rule that the rights of the minority group must be protected. In my opinion, questions arising as to the disposition of funds which fall into the second classification are not controlled by the constitution or rules of the national organization.

In the case at bar, apparently the only financial obligation which Local 2623 owed to the Brotherhood

was a per capita tax of twenty-five cents per member per month. The local was not required by the Brotherhood to set up any initiation fee or collect money from its members, save as to the capitation tax above referred to. The local, however, did collect an initiation fee, collected dues at the rate of one dollar fifty cents per month, and levied assessments upon its members. In its relationship to the Brotherhood, Local 2623 occupied rather an anomalous situation. It was what might be termed an extra-constitutional local, as its non-beneficial classification was not provided for by the constitution of the Brotherhood. The local was not entitled to representation in the quadrennial convention of the Brotherhood; it received no benefits from the Brotherhood; and its members were not entitled to enter the home for the aged which the Brotherhood maintained. The local set up its own "sustaining fund," accumulated other moneys in a "funeral fund," and over all of these moneys apparently had and exercised absolute control.

Paragraphs A and C, § 58, of the constitution of the Brotherhood, read as follows:

"A. Section 58. The General Funds or property of a Local Union shall be used only for such purposes as are specified in the Constitution and Laws of the United Brotherhood and as may be required to transact and properly conduct its business, viz: Payment of salaries and donations to sick members; purchasing stationery, books, cards, printing, payment of rent, or any legally authorized bill against the Local Union. But under no circumstances shall any of the General Funds be used for loans or donations to members, Contingent Fund or for political or religious purposes. Violation of this section subjects the offending Local Union to the penalty of suspension."

"C. The funds or property of a Local Union cannot be divided in any manner among the members individually, but shall remain the property of the Local

Union for its legitimate purpose while ten members remain therein."

These paragraphs recognize the distinction between general funds and the contingent fund, which should be considered a special fund, subject to disposition by the majority of the local. Paragraph C, *supra,* in stating that the funds of a local remain its property while ten members remain therein, does no more than fix a minimum number of members required to keep the local alive. Of course, the funds remain the property of the local union until the local makes some disposition of them, but the local, being unincorporated, is no more than the aggregation of its members; and they are the owners of the funds, and the majority of the members may expend the funds, subject to few restrictions.

It is true that members of the local took an obligation to abide by the constitution and laws of the Brotherhood, and that officers of the local renewed this obligation upon assuming office. In my opinion, it cannot be contended that such an obligation extends beyond the period of the obligor's membership in the local. The members made no contract of life membership in the local and were free to abandon membership therein at will. The obligations taken by the members and officers of the local nowise affect the question to be here determined.

Voluntary unincorporated societies, such as the local unions here in question, "are mere aggregates of individuals called, for convenience, by a common name." 4 Am. Jur. 457, § 3. In the same volume, p. 477, § 35, is found the following text:

"Unincorporated associations, clubs, and societies, unless recognized by statute, have no legal existence. Accordingly, in the absence of statutory authorizations, such organizations cannot take or hold property in the associate name, either by way of gift or pur-

chase. Property ostensibly held by such unincorporated bodies is deemed to belong jointly to the members."

Local 2623 was not in possession of any property which belonged to the Brotherhood. It was required to pay the parent organization a capitation tax of twenty-five cents per month per member, and this it paid. All other funds which it collected were paid pursuant to vote of its members. Unexpended moneys in its treasury, then, belonged in law to its members jointly. These funds were not contributed for any purpose other than the benefit of the local union and its members. Some portion of the funds were assigned as the funeral fund, from which a specified amount should be contributed toward the funeral expenses of a member or one of his family. The sustaining fund was intended to be used for the benefit of the members in case of a strike or a lock-out.

Not over twenty-four of the members of Local 2623 remained with that organization, while approximately 575 became members of Local 49.

Some decisions of this court are in point upon the questions here to be decided. The opinion written by Chief Justice Rudkin, in the case of *Shipwrights etc. Ass'n v. Mitchell,* 60 Wash. 529, 111 Pac. 780, is particularly interesting. That case was decided by this court November 21, 1910, and involved a fund raised by an unincorporated voluntary association of craftsmen, banded together for their mutual benefit. The group or local union had been in existence for about twenty-five years, and after affiliation with several larger or national organizations, in 1902 became affiliated, as Local No. 11, with the International Union of Shipwrights, Calkers & Joiners, an affiliate of the American Federation of Labor. It appears that, during the summer of 1906, the local became affiliated, as

Local No. 2, with the Pacific Coast Maritime Builders Federation, a Pacific coast organization, the local, as shown by the evidence in the case, desiring to maintain its affiliation with the International, as it had theretofore existed. It seems that the members present at a meeting held during the summer of 1906, voted unanimously to affiliate with the Pacific coast organization, becoming Local No. 2 of that group, but ten or a dozen members continued their membership with Local No. 11 of the International and continued to pay the per capita tax required by the International as members of that local.

It appears from the record in the case that the constitution and rules of the International were practically identical with the constitution and rules of the Brotherhood in the case at bar, in so far as the same affected the questions to be here determined.

The International, being dissatisfied with the proceedings of the majority of the local in affiliating with the Pacific coast organization, forfeited the charter of Local No. 11, but this local was soon reorganized, apparently largely from the former membership of Local No. 11, and a new charter was issued. The local had accumulated funds amounting to over one thousand dollars, which the majority had taken with them to Local No. 2; and August 21, 1907, the men who had been elected president and treasurer, respectively, of the new Local No. 2, turned this money over to three persons claiming to be trustees of Local No. 11.

Local No. 2, as an unincorporated association, and many of its members, individually, then instituted the action above referred to, against its former officers, as for conversion, to recover the funds which the latter had turned over to Local No. 11. The judgment of the superior court in favor of the plaintiffs was affirmed, this court saying:

"The case presents questions of fact only. The fundamental error underlying the defense grows out of the erroneous assumption that the respondent association changed and became a different and separate entity every time it changed its affiliations with other labor unions or organizations. This assumption has no foundation in law or in fact. Regardless of the changes in membership and the changes in its affiliations, the association itself has remained the same, and the appellants were guilty of a gross breach of trust when they took it upon themselves to pay over its funds to a rival organization without warrant or authority."

The record shows that the constitution and by-laws of the International, with which Local No. 11 had been and remained affiliated, required that, in the case cited, as in the case at bar, if the charter of a local was forfeited, the funds belonging to the local be turned over to the International. Both in the case cited and in the case at bar, the members had taken the same obligation to support the constitution of the parent organization.

As I understand the records in the two cases, the facts are practically identical. In the case cited, this court held that the association or the local remained the same body, notwithstanding its changes in membership and affiliation, and that the funds belonged to the members of the association, who had paid the money into the treasury, notwithstanding the changes referred to. The mere fact that it appears in the case cited that at one meeting the members present unanimously voted to change the affiliation, while in the case at bar a very small minority voted not to change, is, in my opinion, immaterial. From the record in the case cited, it clearly appears that a minority group in fact remained loyal to the International, and in my opinion, both in the case cited and in the case at bar,

it should be held that the existence of the local was continuous.

The case cited is authority for holding in the case at bar that the funds in question should be prorated between the seceding majority and the loyal minority on a per capita basis, although the court in the case cited gave all the funds to the seceding majority. The proration of the funds recognizes the principle that' the ownership thereof was vested actually in the members of the local, and it seems to me the better solution to prorate the funds between the two groups. The case cited is strong authority against the holding that, as to such funds as those here in question, a seceding majority forfeits all interest therein.

It must be borne in mind that funds such as those in question, raised by the members of a voluntary unincorporated association strictly for their own benefit, belong to the members, are subject to their will, and are not governed by the same rules as funds raised by an organization for the purpose of furthering some particular religious or other definitely established work, or for some particular end, such as the purchase of property and the construction of a building. Such funds are impressed with a trust, having been donated or paid pursuant to a definite plan for a particular objective. Moneys raised by such an association as that with which we are here concerned, to be used by the association for the benefit of its members by way of direct aid or assistance in case of sickness, are subject to the will of the majority of the members of the association, as the funds were collected in order to be so used. Courts have been careful, in connection with matters concerning funds of the first class above referred to, to see that such funds are employed in accordance with the trust impressed thereon by the manner of their collection, it having been held that such

funds cannot be diverted from the use to which they were dedicated, save by the unanimous consent of all persons interested. This doctrine is sound, and should be followed in cases in which it is applicable.

The opinion of this court in the case of *Grand Court etc. v. Hodel,* 74 Wash. 314, 133 Pac. 438, 47 L. R. A. (N. S.) 927, falls within that class of cases in which the use of funds by a subordinate lodge is restricted by the constitution of the national. In that case, it appeared that the Foresters of America was a voluntary, benevolent, and social association, having subordinate lodges throughout the United States. The highest authority in the order was the supreme court; next came grand courts, possessing certain definite powers granted by the supreme court; and last came subordinate courts, which received their charters from some appropriate grand court. The order was governed by a written constitution and laws enacted thereunder, which provided minutely for the collection of the revenues of the order and the purposes for which the same might be expended, the portion of the general laws relating thereto reading as follows:

" 'All property and funds of a court and their increment, shall be held exclusively as a trust fund for carrying on the fraternal and beneficial features of the order, and shall not be expended for any other than those purposes, and the payment of the necessary expenses of a subordinate court and the order.' "

A local court was existing in the city of Seattle, and owned certain funds raised pursuant to the constitution and laws of the order. This local court passed a resolution to the effect that the court secede from the order and affiliate with another fraternal order which was then being organized. About seventy members of the lodge were present at the meeting, all, save seven, voting in favor the resolution. The members

who voted in the affirmative withdrew from the order and took with them the property and money of the court. The seceding members were later suspended, and a new election was held by the loyal minority, whereupon the grand court sued the individuals who had seceded for the recovery of the court's property. From a judgment in plaintiff's favor, the defendants appealed, contending that, if a majority of the subordinate lodge voted to secede, they could take with them the money and property of that lodge. In affirming the judgment of the lower court, this court said:

"All of the properties which this branch of the order, as a fraternal and benevolent organization, had gathered together were trust funds in the sense that they were collected for particular uses. They were held in trust for the purposes designated by the constitution and laws of the order, and every member of the order has an interest in the fund to the extent of seeing that it is appropriated to the uses for which it was collected. No number of the members of the order less than the whole could, therefore, divert the funds to other uses than the uses defined in the constitution and laws of the order."

The distinction between the case last cited and the *Shipwrights* case is clear. In the *Grand Court* case, the funds of the local lodge had been raised pursuant to rules and regulations of the national, and were, from the time they were so raised, expressly devoted to purposes prescribed by the constitution and laws of the grand court. In the *Shipwrights* case, the funds were voluntarily raised by the members of the local, pursuant to no mandate from the International, and were not earmarked or dedicated to any purpose other than the will of the majority of the local. The same is true as to the funds which are the subject matter of the case at bar.

In the *Shipwrights* case, the membership simply took the funds with them, changing the title of the bank account by adding Local No. 2. In the case at bar, it appears that the funds were taken out of the treasury by vote of the local, by appropriating the money to certain members, who were in fact not entitled thereto, but who turned the money into the treasury of Local 49. That the members of the local sought, by subterfuge and indirect methods, to do what, in my opinion, they could have accomplished by direct methods, does not deprive them of their rights.

Section 58, paragraph C, of the constitution of the Brotherhood, above quoted, refers to the general funds of the local, raised pursuant to mandate of the Brotherhood, or dedicated by the local to specific purposes, and not to moneys which, while the property of the members of the local, can be, by a majority vote, expended for any unprohibited purpose.

In the case at bar, I assume the continuity of appellant Local 2623, and it seems to me that, in the *Shipwrights* case, the continuity of Local No. 11 should also be assumed. I am convinced that it should be held that the portion of the opinion of the court in the *Shipwrights* case above quoted applies with equal force to the situation here presented. As an equitable proposition, I favor prorating the funds, rather than giving the entire amount to the majority, but the principle laid down in the *Shipwrights* case is correct, and should be followed.

The funds here in question, while the property of the individual members of the local, were always subject to the will of the majority, and the inchoate right of each member to participate in such benefits as might be accorded in case of sickness or death in the family, was always subject to the power of the majority to expend the fund, as well as to other hazards in-

hering in the situation. The funds were raised pursuant to the vote of the majority of the members of the local, were not irrevocably dedicated to any specific purpose, either by the constitution of the Brotherhood or the will of the majority of the local, as expressed in the motion or resolution pursuant to which the funds were raised, and remain subject, save as to certain restrictions, to the will of the majority.

In the case at bar, Local 2623 was required by the Brotherhood only to collect and pay the capitation tax. The collection of any other moneys depended upon the will of the local, and while the local might collect other funds for such purposes as it might designate, subject to the prohibitions against expending money for political or religious purposes, the local apparently had a large measure of control over the collection and expenditures of such funds as might come into its treasury.

In cases of this latter class, courts endeavor to protect the rights of all persons concerned, by prohibiting any unfair use of the funds to the advantage of certain individuals of the group, rather than for the benefit of the members of the group as a whole; always bearing in mind the rights of the majority of the membership, acting within the bounds of reason and fairness, to control the expenditure of the group's money, and the rights of any minority to be protected against illegal exploitation.

In the case of *Centralia Labor Temple Ass'n v. O'Day*, 139 Wash. 331, 246 Pac. 930, it was held that funds raised for the construction of a building constituted a trust fund for that purpose, to be disbursed in accordance with the purpose for which the money was given. The case is not in point here.

The case of *Cox v. United Brotherhood of Carpenters etc.*, 190 Wash. 511, 69 P. (2d) 148, cited in the

opinion of the majority, concerned an attempted revocation of the charter of a local union by the parent organization. It was held that the proceedings of the parent group were illegal as not based upon due process. No such question is present in the case at bar.

The opinion of division two, first appellate district court of California, in the case of *Scott v. Donahue,* 93 Cal. App. 126, 269 Pac. 455, is in point here. The action was, in effect, a proceeding in equity, to establish a trust fund. Local 198 of the Brotherhood of Railroad Trainmen consisted of two hundred eighty-four members. The majority of the members opposed the policy of the parent organization, with the result that the local charter was revoked, the minority who supported the action of the national organization becoming members of a new local. Local 198 had owned four Liberty bonds, which were claimed both by the seceding majority and the loyal minority, the latter having prevailed before the trial court. The appellate court, after quoting from the opinion of the supreme court of California in the case of *Grand Grove etc. v. Garibaldi Grove,* 130 Cal. 116, 62 Pac. 486, 80 Am. St. 80, as follows:

" 'Associations of this character are not bodies politic or corporations, nor are they recognized by the law as persons. They are mere aggregates of individuals called for convenience, like partnerships, by a common name. . . . All the property said to belong to it is in fact the property of its members and each man's share of it is his own private property and equally protected by the fundamental laws,' "

continued:

"When funds have been acquired by the association for the mutual benefit of its members, as to care for the individuals in case of sickness, such funds constitute a trust in favor of every member of the association in good standing, and, in absence of special agreement,

the parent body cannot successfully lay claim to the funds upon an involuntary dissolution of the local association."

For the purposes of the opinion, the appellate court assumed that the action of the officer of the national brotherhood in revoking the charter of Local 198, was in accord with the constitution and by-laws of the brotherhood, the constitution providing that, upon revocation of a local charter, all the property of the local should be delivered to the national. The action, however, apparently was simply between two groups of the defunct Local 198. In construing the constitution of the brotherhood, the court held that "moneys belonging to the lodge as a lodge or the funds held by the lodge in trust for its members" were not within the provisions thereof, and that the Liberty bonds which were the subject matter of the action were not affected by any contract between the brotherhood and the local. Discussing the question presented, the court said:

"Where funds have been raised by a local lodge, or order, for the general purposes of the parent organization, such as the teaching of the religion or creed of the general body, they constitute a trust fund for the purpose for which they were raised and 'no number of the members of the order less than the whole could therefore divert the funds to other uses than the uses defined in the constitution and laws of the order.' (*Grand Court, etc., v. Hodel, supra* ['74 Wash. 314, 133 Pac. 438, 47 L. R. A. (N. S.) 927].) The rule is based upon the sound principle that a trust fund must be devoted to the purposes for which it was raised. It has no application to a sick benefit fund raised for the benefit of all the members of the local lodge and to which all who are in good standing at the time of an involuntary dissolution of the local are entitled to their proportionate share. Thus, the judgment herein is error in its finding that these funds constituted a trust fund for the benefit of the minority

members of Local 198 who affiliated with Local 947. The fund was raised for the benefit of all members— it was a trust for all and not for any particular number of them less than all."

The appellate court reversed the trial court and directed that the bonds be sold and the proceeds distributed equally among all the former members of Local 198 who were in good standing upon its rolls at the time of its dissolution. The supreme court denied a petition to review the judgment of the appellate division.

In the case at bar, as in the California case, the money which was the subject matter of the action had been contributed by the members of the local, under no compulsion from the Brotherhood, and for the purposes of the local. The Brotherhood received everything to which it was entitled. It has no claim to the money the ownership of which must be here determined.

The supreme court of Massachusetts, in the case of *Donovan v. Danielson,* 271 Mass. 267, 171 N. E. 823, held that the title to a fund raised by a local lodge affiliated with a national organization was in the members of the local lodge. In the course of its opinion, the court said:

"A decisive consideration is whether the property in question has been collected by the subordinate body as an administrative organ for the obtaining of property for the uses of the order as a whole; or whether it has been got together for the use of the unit which made the collection."

The court calls attention to the fact that a different rule is generally applied where the local organization is incorporated and owns the property. The court referred to the rule established by its previous decisions, to the effect that the property of an unincorporated

voluntary association belongs to the entire membership, if it has been collected and held for the purposes of the association as a whole,

" . . . but that it may belong exclusively to the subordinate association if it is collected solely from the members of the subordinate association and is held for the uses of the latter."

The judgment of the trial court awarding the fund to the representatives of the national organization was reversed.

In the case of *Grand Court etc. v. Court Germania No. 1,* 192 Mich. 380, 158 N. W. 832, the supreme court of Michigan held that money in the treasury of the local lodge, which had been raised entirely by its membership, belonged to the local, and was not forfeited to the national organization upon secession of the local lodge.

In the earlier case of *Detroit Sav. Bank v. Haines,* 128 Mich. 38, 87 N. W. 66, the supreme court of Michigan held that a sick benefit fund, raised by the members of a subordinate lodge, belonged to the members of that lodge, and that the national organization had no right to or interest therein, and that the transfer of the title to the fund to a different order by almost unanimous vote of the lodge conveyed title.

The cases of *State Council etc. v. Emery,* 219 Pa. 461, 68 Atl. 1023, 15 L. R. A. (N. S.) 336, and *Schweitzer v. Schneider,* 86 N. J. Eq. 88, 256, 97 Atl. 159, 98 Atl. 1086, are of interest in this connection.

The articles of personal property were purchased for Local 2623, and dedicated to that group. Of course, they were convenient, and even necessary, to its use, and the trial court correctly ordered that they should stay with that local. In so far as the money in question is concerned, it seems to me clear that this constitutes a trust fund for the benefit of the members of the local,

having never been impressed with a trust for any specific purpose, save, generally, for the benefit of the membership. The reasoning of the California court of appeals in solving a very similar problem, as stated in its opinion in the case of *Scott v. Donahue, supra,* appeals to me as sound in law and equity.

For the reasons assigned, I dissent from the conclusion reached by the majority.

GERAGHTY and HOLCOMB, JJ., concur with BEALS, J.