[No. 31947.    Department One.    August 21, 1952]

RETAIL CLERKS LOCAL UNION NO. 381 *et al., Respondents,*
v. CARL A. WESTLING *et al., Appellants.*[1]

[1]Reported in 247 P. (2d) 253.

*J. W. Bryan,* for appellants.

*Merkel & Cook,* for respondents.

SCHWELLENBACH, C. J.—This action was instituted by the respondent, Retail Clerks Local Union No. 381 of Bremerton, Washington, to recover certain of its funds alleged to have been misappropriated by appellant, Carl A. Westling, while the latter was corresponding financial secretary-treasurer of Local No. 381. At the time of the commencement of the action, the Local was, by its own request, under the jurisdiction of its parent body, the Retail Clerks International Association, A.F.L.

To avoid confusion, we shall hereinafter refer to the respondent as the Local, to Westling as if he were sole appellant, and to the Retail Clerks International Association as the International.

The appeal is from a judgment of $1,445.21 in favor of the Local against Westling, and presents two questions: (1) Did the trial court err in finding that Westling was indebted to the Local in any amount in excess of what the Local owed him, and in disallowing the amounts claimed due him on the accounting? (2) Did the trial court err in determining that the International had jurisdiction to take over the affairs of the Local, remove its officers, and appoint new officers?

Appellant Westling was the duly elected and qualified corresponding financial secretary-treasurer of the Local. As such, it was his duty to keep accurate and faithful accounts and records of its funds and assets; to collect, receive, and account for all fees, dues, assessments and fines; to make proper disbursements, and to deposit all funds coming into his possession to the credit of the Local.

From November, 1949, to and including October 16, 1950, shortages appeared in Westling's accounts. The exec-

utive board of the Local requested the International to assume jurisdiction over the Local and make a complete investigation. Both the International and the appellant employed accountants to go over Westling's accounts and records, and to investigate his affairs with the Local. They, together with an accountant appointed by the court, submitted their reports and conclusions to the court and, in addition, were examined and cross-examined during the trial. We have examined the testimony and the exhibits, and conclude that the trial court was correct in finding that Westling owed the Local the amount indicated, and also that Westling was not entitled to any claim or credits against that amount.

We turn now to the question respecting the jurisdiction of the International over the Local. The Local was organized and established as a subordinate unincorporated local union by the International, and as such, is bound by the constitution and by-laws of the International. *Lumber & Sawmill Workers Union No. 2623 v. International Woodworkers of America, Local 49,* 197 Wash. 491, 85 P. (2d) 1099.

Section 6 (c) of the constitution of the International provides:

"The right is reserved in the International Association to establish jurisdiction over any Local Union or District Council whose affairs are conducted in such a manner as to be a menace to the welfare of the International Body."

Let us now examine the minutes of the meetings of the Local to determine what transpired with respect to this controversy.

The minutes of a meeting of the executive board of the Local, August 22, 1950, presided over by President Marvin Cox, show that a motion was passed to request the International to place the Local under the supervision of the International for a complete investigation into the financial standing of the Local, and also an investigation into the neglect of duty by the secretary-treasurer, Westling. This request was subsequently communicated to the International.

At the next meeting of the executive board, August 31, 1950, a letter from James A. Suffridge, secretary-treasurer of the International, dated August 25, 1950, was read to the members. The letter, which was directed to Paul Hansen, Director of Organization (of the International), Northwest Division, Seattle, stated:

"You are hereby authorized and instructed to place Local No. 381 of Bremerton, Washington, under International jurisdiction in accordance with Section 6 (c) of the International constitution; to remove its officers, if necessary; to appoint new officers when deemed advisable and to assume charge of the finances of the local union; to receive and dispense its funds and to sign or authorize the signing of any checks drawn against such funds. . . .

"The above action is necessary to protect the welfare and interest of the rank and file membership of Retail Clerks Local Union No. 381. It is the intent and purpose of the International Association to restore full local autonomy to this Local Union and to hold a democratic election for officers of said Union as soon as it is practicable."

At this meeting, Westling was ordered to turn over all books, records, etc. to the International representatives.

The board next met September 28, 1950. International Organizer McDavid reported that Westling had not complied with the request of the board. It was then ordered that all books and records be delivered to the regional office by October 2nd, and that Director Hansen be empowered to select a certified public accountant to audit the books.

When the board again met, October 16, 1950, Mr. McDavid explained the findings made by the accountant, and reported that Westling had been removed from office. The board appointed McDavid acting secretary-treasurer in place of Westling. A special membership meeting was set for October 26, 1950.

At the membership meeting of the Local, October 26, 1950, Director Hansen gave a full report on the accountant's investigation and explained why Westling had been removed from office. The members of the Local sustained and approved the action of the executive board by a unanimous vote.

Subsequent meetings of the board were held on November 1st and 12th, at which Hansen and McDavid were authorized to employ an attorney and commence civil action against Westling to recover the funds due the Local.

At a meeting of December 4, 1950, a special membership meeting was called for December 18th for the purpose of nominating new officers. ·Postcard notices of the meeting, signed by Darrel V. Tracy, the business agent selected after the International assumed jurisdiction, were mailed to all members of the Local.

The meeting of December 18th was exceptionally well attended. Those friendly to Westling were in control, and elected Marvin Cox president. In fact, they elected the entire Westling slate, including Westling himself as corresponding financial secretary-treasurer. They then passed a resolution that the pending case against Westling be dropped and the action dismissed. At the beginning of the meeting, Paul Hansen, the International regional director, declared that the meeting was illegal, but he was ruled by the chair to be out of order. Hansen and McDavid then suggested that everyone go home, and a number of the members either left the hall or moved to the rear. Mr. Hansen then called a meeting of the special executive board and proceeded to dismiss Cox as president, and replaced him with Oliver I. Helms. This action was approved by the board.

Each side has accused the other of holding a "rump" meeting. In view of what recently transpired at the national political conventions in Chicago, it would appear that "The Eyes of Texas" were upon Bremerton on December 18, 1950.

The constitution of the International contains express provisions which govern the discipline and removal of members and officers of the Locals. It requires charges, notice to the accused, and trial by an elected group. No charges were preferred against Westling, nor was he brought to trial in conformance with these requirements.

■ We cannot agree with respondent that the provisions of Section 6 (c), as quoted above, give the Interna-

tional the right to remove officers of the Local without resorting to the procedure provided in other sections of that constitution. The constitution of the International and the rules adopted thereunder, form a contract between the association and its members which is binding on all concerned. *Cox v. United Brotherhood of Carpenters, etc.*, 190 Wash. 511, 69 P. (2d) 148; *Lumber & Sawmill Workers Union No. 2623 v. International Woodworkers of America, Local 49, supra.* See, also, Dangel and Shriber, Labor Unions, 228, § 199.

If, after making their investigation, the International representatives felt that Westling should have been removed from office, they could and should have preferred charges and conducted a trial pursuant to the provisions of the constitution. They failed to do so, however, and Westling's removal was unlawful.

■ However, the jurisdiction assumed by the International at the request of the Local was not a mere gesture. Such action was provided for by the constitution, and what we have said with respect to the binding nature of the constitution is applicable here. The International was authorized to take over the books and records, assume charge of the finances of the Local, receive and dispense its funds, and regulate its affairs. The International, having obtained jurisdiction, had the right to retain it until the affairs of the Local were restored to order. Its representatives were entitled to function without the interference of certain groups within the Local.

Mr. Hansen, the International director, testified that he did not approve the calling of the meeting of December 18th, and that he so advised Mr. Cox. That meeting, therefore, and everything that transpired in it was illegal and void.

■ There is another reason why the resolution adopted to dismiss the action against Westling was invalid. Article IV, Section 2, of the Local constitution provides:

"Special meetings shall be called only upon written notification of the members, and then only for the transaction of such business as may be named in the call."

The notice of the special meeting for December 18th limited its business to "reports and nomination of officers."

The case at bar resolves itself down to this: The Local brought an action against Westling to recover funds which, it was alleged, he had misappropriated. The trial court, after a full hearing, rendered judgment against him in the amount of $1,445.21. Although we are of the opinion that the representatives of the International had no right to discharge Westling without the proper formalities, they did have jurisdiction over the Local with the right to control its activities until the difficulties had been remedied.

Appellant makes an extensive argument concerning compensation due him for the period of time he was illegally out of office. Since he did not raise this issue in his answer or cross-complaint, the question is not before us.

The judgment is affirmed.

MALLERY, GRADY, DONWORTH, and WEAVER, JJ., concur.

---

October 22, 1952. Petition for rehearing denied.